JOSEPH D. CLARK, Adm'r., &c. *v.* BENJAMIN F. CLARK *et al.*

1. Where an administrator agreed with two persons that they should buy certain articles of personal property, and give their note to the Administrator therefor, and that the property was to be purchased for the common benefit of all three of the parties, and that each one should pay off and discharge one-third part of the note so given: *Held*, that upon a suit upon said note by the Administrator, it was competent for defendants to offer parol testimony to prove the agreement between the parties, and the plaintiff under the C. C. P. could recover of defendants but two-thirds part of said note.

2. Under the C. C. P., a defendant may avail himself of any defence that would have been available under the old mode of procedure, either in a Court of Law or Court of Equity.

3. Such an agreement is not illegal, unless it be shown that the creditors of decedent, or his distributees, may be prejudiced by such conduct on the part of the Administrator.

4. If upon the cross-examination of a witness he is asked as to collateral matters, and is examined as to *particulars* not presented by the issues, the party is bound by the answer, and will not be allowed to go into evidence *aliunde*, in order to contradict the witness.

(Observations as " to double pleading " under the old system, and C. C. P.)

Civil action for money demand tried before *Watts, J.*, at Fall Term of the Superior Court of NORTHAMPTON County.

The plaintiff declared upon a single bill for twenty-eight hundred and fifty-eight dollars and forty-nine cents, payable to him as the administrator of James Clark, deceased, and executed January 1st, 1866. On said single bill was endorsed a credit of two hundred and two dollars and fifty cents, made December 28th, 1868.

The defendants, in their answer, admitted the due execution of the said single bill, but claimed credit for two payments in addition to the one endorsed on the bill, to wit: one for three hundred dollars, October 23d, 1866, and the other for twenty dollars, November 4th, 1866. They also claimed upon the ground of an equitable set-off, or counter claim, that said

single bill should be abated one-third of its original amount and asked that judgment be granted the plaintiff for two-thirds only of the original amount of the single bill, less the three payments before mentioned. The answer was denied by the plaintiff.

The defendant offered to introduce evidence to show that the plaintiff, as the administrator of James Clark, deceased, had a sale of the personal property of his intestate, and that said bond was given for articles purchased at said sale, to wit: corn, fodder, pork, farming utensils, a lot of staves, cotton and household and kitchen furniture, and that at said sale it was agreed between the plaintiff and the defendants, Benjamin F. and William E. Clark, that the defendant, Benjamin, should buy the said property, and all three would use them in common, and each pay for one-third thereof.

The plaintiff objected to the introduction of this evidence, which objection was overruled by the Court. The defendant, Benjamin Clark, testified that he and the plaintiff, with the defendant, William E. Clark, used the said articles in common, and they were purchased in common, and each one was to pay one-third part thereof. That beside the payment endorsed on the bond, he made a payment of three hundred dollars Oct. 23d, 1866, and another of twenty dollars Nov. 4th, 1866.

On his cross-examination the witness said that he and plaintiff did not use any of the said articles in common except the corn, fodder and pork. That plaintiff had received one bed and bedstead of said articles; that he had made out and given to a lawyer for collection, an account against plaintiff for board for himself and horse during the year they farmed together, and used in common the said corn, fodder and pork; that he (the witness) shipped the staves and cotton aforesaid, in his own name, and received the money therefor, and that he has not paid to plaintiff any part thereof.

The plaintiff's counsel asked the witness if he did not forbid the plaintiff to come on the plantation when they were farming

together, and if he did not shoot and hit him with seven buck-shot, because he went on said plantation? The Court instruct-ed the witness to answer the question or not, as he chose. The witness answered in the affirmative, and went on to explain, that he was plowing in one part of a field on their joint farm, and the colored laborers in another, when the plaintiff rode into the field, dismounted, tied his horse, and went to where the colored laborers were at work; that he (the witness) left his plow, and advanced towards the plaintiff, who met him; that so soon as they met, witness told plaintiff, that as they could not get along together, that plaintiff must leave, or he would shoot him; whereupon the plaintiff opened his bosom and told witness to shoot; when witness did shoot, but did not know the exact number of shot with which he hit the plaintiff. That he shot plaintiff because he had threatened to shoot witness' wife.

The plaintiff's counsel asked the witness if he did not, as soon as plaintiff left his horse, take said horse and go to the house after the gun, with which he shot plaintiff. Witness declined to answer, to which plaintiff excepted.

The plaintiff offered to introduce evidence to show that the explanation made by witness of the shooting, and especially that part of it in which he charged that plaintiff had threatened to shoot the wife of witness, was false. The defendants ob-jected to the evidence, and his Honor sustained the objection, upon the ground that all the evidence about the shooting was collateral matter, and that plaintiff therefore was bound by the answers of witness. Plaintiff excepted.

It appeared that the matters upon which plaintiff's counsel examined the witness, Benjamin F. Clark, touching their per-sonal difference in regard to their farming transactions, and the shooting affair, occurred two years after making the single bill, sued upon, and upon a farm other than the one upon which they were living, when the agreement was made

for the purchase of the articles for which said single bill had been given.

The jury for their verdict said, that defendants were entitled to a counter claim of one-third of the single bill, declared on, and find all the rest of the issues for plaintiffs.

Judgment in accordance with the verdict, and appeal by plaintiff.

*W. W. & R. B. Peebles* for plaintiff.

1. In Equity as well as in Law, parol evidence will not be admitted to contradict or vary a written contract, unless there is an allegation of fraud, mistake, imposition or oppression. *Whitfield* v. *Cates*, 6 Jones' Eq. 136; *Parker* v. *Vick*, 2 Dev. & Bat. Eq. 195; *Howell* v. *Hawks*, 2 Dev. Eq. 258; *Clark* v. *McMillan*, 2 C. L. R. 265 (244); *Hawkins* v. *Hawkins*, 1 Car. L. R. 495; *Gatlin* v. *Kilpatrick*, 1 Car. L. R. 534.

2. When the cross examination is as to matters, which, although collateral, tend to show the temper, disposition or conduct of the witness towards the cause or the parties, the answers of the witness to these matters are not conclusive, but may be contradicted. *State* v. *Patterson*, 2 Ire. 346; *State* v. *Kirkman*, 63 N. C. 246.

3. Equity will not interfere where there is an adequate remedy at law. The claim of Benjamin Clark against plaintiff was an individual matter, and there is no allegation that the plaintiff is insolvent, and the said Benjamin Clark therefore had his remedy at law. *Wells* v. *Goodbread*, 1 Ired. Eq. 9; *Glasgow* v. *Flowers*, 1 Hay. 233 (267.)

4. The matter pleaded by the defendant does not constitute either an equitable off-set or counter claim.

The bargain for the purchase of the property, mentioned in the pleadings, was an individual matter, a debt due from Joseph D. Clark, individually, to Benjamin Clark, and cannot be paid

out of the assets of the estate of Joseph D. Clark's intestate. It does not appear that Joseph D. Clark ever promised or attempted to use the assets of his intestate to pay his individual debt, but the defendant is seeking to make him do it. *Exum* v. *Bowden*, 4 Ire. Eq. 281; *Foy* v. *Alexander*, 1 Ire. 340; *Bunting* v. *Ricks*, 2 Dev. & Bat. Eq. 130; *Powell* v. *Jones*, 1 Ire. Eq. 337; *Lemly* v. *Atwood, et. al.* 65. N. C. 46; *Wilson* v. *Doster*, 7 Ire. Eq. 231; *Smith* v. *Fortesque*, Busb. Eq. 127.

*D. A. Barnes*, for defendant.

PEARSON, C. J.  The defendant, Benjamin F. Clark, in support of an equitable counter claim, alleges: "That the articles for which the note was given, were purchased at a sale by the plaintiff, as administrator of James Clark, on the joint account of himself, plaintiff, and the defendant W. E. Clark, in pursuance of an understanding previously had between them; and said articles were taken and used between them, in a joint business of farming; the proceeds of which farming, were equally divided between them." The articles consisted of corn, fodder, pork, stock, &c., and were used as the joint property of all; and insists that the plaintiff should abate one-third of his demand.

The plaintiff in reply to the answer, says, "that the facts set forth therein are not true." This issue is submitted to a jury and the verdict is in favor of the defendant, and the abatement of one-third is allowed.

The position, that evidence of the alleged understanding in regard to the purchase of the articles was inadmissible because it contradicted and varied the written instrument, is not tenable, and was assumed under an entire misapprehension of the application of the rule in respect to written and parol evidence. The fact of an understanding between the three brothers, in regard to the purchase of the articles, and how the price was to be paid, in no wise "contradicts or varies" the terms of the

bond given for the price. The defendants admit that they are bound at law for the full amount of the bond, and set up the understanding as an independent and collateral matter. Suppose an administrator procures a friend to buy property at the sale for him, and in pursuance of the understanding, the friend gives a note and sureties for the price; will any one say that the proof of this understanding will be excluded by the rule, that written instruments cannot be contradicted, or varied, or added to by parol evidence? This is our case, except that the understanding was confined to *one-third* of the property.

The second position, that the defendants cannot be heard to set up an understanding, in which they are *particeps criminis*, and by which an administrator buys at his own sale, for one who goes into a Court of Equity is required to "have clean hands;" is likewise untenable. The principle only applies to cases where creditors or the distributees may be injured by such conduct on the part of the administrator. In our case there is no proof of the existence of creditors, and no allegation or proof of an injury to the distributees; so, as far as the Court can see, "nobody is hurt;" in short, no one save creditors and the distributees can complain of the fraud. Certainly the administrator himself cannot do so, as a means of enabling him to commit a greater fraud, and evade payment for one-third of the price of the articles, according to his agreement.

We concur in the position taken by the counsel of the defendants, that under C. C. P., the defendant may avail himself of any defence that would have been available under the old mode of procedure, either in a Court of Law, or in a Court of Equity.

The plaintiff takes a judgment at law for the amount of note and interest, minus the payments. The defendants file a bill, setting out the understanding, that the plaintiff was to pay one-third of the note, and praying to have it specifically performed, and for an injunction against the collection of one-third of the amount of the note. The plaintiff in his answer, denies that

there was any understanding by which he was to pay one-third of the price. There was "replication and commissions. Cause set for hearing."

The Court declare the facts to be, that the plaintiff (at law) did, before the sale, have an understanding with the defendants, that he would discharge one-third of the price of the articles purchased; and it is declared to be the opinion of the Court, that the plaintiff (in Equity) is entitled to have a credit entered on the judgment at law, and to a perpetual injunction. Such is the relief to which he would have been entitled, under the old mode, by application to a Court of Equity. Under the C. C. P., he is entitled to the same relief in the one action, upon the exceptions to the points of evidence. There was no question made as to the ruling of his Honor, in respect to the privilege of the witness to answer or to refuse to answer questions tending to criminate him; but the exception is, that inasmuch as he had elected to answer, and to make certain statements as to particular circumstances, the plaintiff was at liberty to contradict him in reference to those particular circumstances, as tending to show his feeling in regard to the parties or the subject of the inquiry.

The fact, that by statute, a party is made a competent witness in his own behalf, presents the question in an aspect entirely new, and our conclusion is, had the question upon cross-examination, been general, "are your feelings towards the plaintiff friendly or unfriendly?" and the answer been, "my feeling towards him are friendly," evidence in contradiction, might have been offered as tending to show "the animus or feeling of the witness, in respect to the subject of the action or the parties;" but when the cross-examination, instead of being general, descends to particulars, then the party is bound by the answer, and cannot be allowed to go into evidence *aliunde* in order to contradict the witness, for it would result in an interminable series of contradictions in regard to matters collateral, and thus lead off the mind of the jury from the matter at issue.

A juror is aked, "have you formed and expressed an opinion?" His answer is conclusive; a witness is asked upon his *voir dire,* as to interest, his answer cannot be contradicted. When a party becomes a witness, his answer in regard to collateral particulars, is conclusive, although an answer to a general question as to his state of feeling, may not be so.

Upon the conference of the Judges, this question was mooted. The jury have found that the plaintiff had agreed to pay one-third of the price of the articles; suppose in point of fact, he has not been allowed to have the benefit of the one-third, but was excluded from the use and benefit of any, save a very small part, and the defendants had the use of the larger part; is·the plaintiff to be subjected to an abatement of one-third of the price, or only of the value of the articles of which he had the benefit?

It is enough to say, this question is not raised by the pleadings, and the Court and jury are confined to "the issues arising upon the pleadings;" there must be "*allegata*" as well as "*probata.*" Here the facts elicited upon cross-examination, were not relevant to the issue, and were only pertinent, as tending to contradict the witness in regard to the alleged understanding, that the plaintiff was to pay one-third of the price.

Under the old mode of procedure, when the plaintiff in his answer, denies that there was any understanding by which he was to pay one-third of the price, and the fact is declared against him, there was no way in which he could "change front" and say, "if there was such an understanding, I have not been allowed to have my third part of the articles purchased; and should only be charged in account with the value of such as I have had the benefit of."

The reply is: "You have, on oath, denied that there was any understanding that you were to pay for, and have the benefit of, one-third of the articles purchased. 'After blowing hot you cannot be allowed to blow cold,' and complain that you had been treated badly in respect to the third part; for,

you say, you were not entitled to any part, and have a right to enforce the payment of the whole amount of the bond."

In the procedure, according to the course of Courts of Equity, a defendant never could take two grounds of defence that were inconsistent, for he was forced to swear to his plea or his answer; and although in Courts of Law, after the statute 4 Anne, there was sometimes in form and appearance an inconsistency in *double pleading ;* yet, in fact, when submitted to the ordeal of a trial by jury, there was no inconsistency.

In the mode under C. C. P. inconsistency is prevented, because the defendant is required to demur or answer, and although the answer need not be on oath, (unless the complaint be verified on oath,) still, as the defence is made by way of *answer*, it does not admit of the same seeming inconsistency as is sometimes met with in *special pleas*, according to the procedure in Courts of Law. For illustration, in an answer, it would be absurd for a defendant to say "there was no understanding that I should pay one-third of the price and have one-third of the articles purchased ; *but if there was such an understanding* you cannot hold me bound by it, because you did not let me have my share; and I should only be charged with the value of the articles I was allowed to enjoy."

It must be conceded that by the mode of "double pleading" in Courts of Law, this absurdity did sometimes present itself, so as to justify the irony in a supposed case. "Action for a pot borrowed," plea, "defendant denies that he ever borrowed the pot," and by leave of the Court, for a second plea, avers, "that he returned the pot," and for further plea, sayeth "the pot was broken when he borrowed it."

We are inclined to the opinion, as a matter of fact, that the plaintiff did not have his equal share of the articles purchased. If so, it was his folly to *deny* the fact of an understanding that he was to pay for and have the benefit of one-third of the articles, instead of admitting the fact, (which by the verdict of the jury is true,) that there was such an understanding, and *avoid-*

*ing the force of it* by the averment that the defendants had violated the contract on their part. In the absence of an allegation of that fact, the evidence tending to show it is irrelevant to the issue, and was only admissible to impeach the testimony of the defendant, B. F. Clark; but the jury fix the fact that there was an understanding that the plaintiff was to pay one-third of the price, and have one-third of the benefit of the articles purchased.

Under C. C. P. there is no reason why the plaintiff might not, in his complaint or his replication, have confessed the fact of the understanding, and *avoided,* by alleging that he was not allowed to have the benefit of one-third of the property.

He chose to make a *flat denial,* and must abide by his election.

No error.

PER CURIAM.                    Judgment affirmed.