## LEWIS H. JONES v. SUSAN JONES.

### *Evidence—Examination of Witness.*

1. The testimony of a witness, elicited on cross-examination, relative to some collateral fact, or some act of his tending to show his bias, par-tiality or prejudice towards one of the parties litigant, cannot be con-tradicted without giving the witness an opportunity to explain the discrediting circumstance.

2. Testimony relating directly to the subject of litigation may be met by evidence of inconsistent facts or contradictory statements previously made by the witness, without first calling his attention to such facts or statements.

3. Whenever the credibility of a witness is assailed, it may be supported by proof of previous statements made by him correspondent with his testimony on the trial, whether such previous statements were made *ante litem motam* or pending the controversy.

(*State* v. *Patterson*, 2 Ire., 346 ; *State* v. *McQueen*, 1 Jones, 177 ; *Clark* v. *Clark*, 65 N. C., 655 ; *State* v. *George*, 8 Ire., 324 ; *Hoke* v. *Flemming* 10 Ire., 263 ; *State* v. *Dove, Ibid.*, 469 ; *March* v. *Harrell*, 1 Jones, 329 ; *State* v. *Laxton*, 78 N. C., 564 ; *Parish's case*, 79 N. C., 610, cited and approved.)

CIVIL ACTION for Divorce *a vinculo matrimonii* tried at Fall Term, 1878, of WAKE Superior Court, before *Seymour, J.* The facts applicable to the point decided by this court are embodied in its opinion. Judgment for defendant, appeal by plaintiff.

Messrs. *T. M. Argo* and *Armistead Jones,* for plaintiff.
Messrs. *Reade, Busbee & Busbee,* for defendant.

SMITH, C. J. The only issue submitted to the jury was in these words: "Did the defendant commit adultery with one Wm. Delaware in May, 1877?"

To prove the affirmative the plaintiff introduced one John Jones who testified that he went to the plaintiff's house to live some time in May, 1877, a day or two after the 7th of the month, as well as he could remember. To contradict this statement the defendant offered an affidavit of the witness made in January, 1878, to be used on the hearing of a motion in the cause, wherein the witness swears that he went to live with the plaintiff some time about the first of March, 1877. The plaintiff objected to the admission of the affidavit without assigning the grounds of his objection, and it was received by the court. The exception to the ruling is sustained in the argument before us, for that, the attention of the witness was not called to the proposed impeaching evidence on his examination, nor the writing itself produced. The exception rests upon a misapprehension of the rule. The testimony with which the affidavit conflicts, is pertinent and material to the pending enquiry whether the alleged criminal act was committed in the month of May, 1877. In such case no preliminary examination is required and the contradicting statement may be made to confront the witness without previous intimation to him of its existence or nature. If the matter, the details of which are extracted in the cross-examination, is collateral merely,

the answer of the witness is conclusive and no proof to the contrary is allowed. When, however, the collateral matter consists in acts or declarations of the witness, indicating temper, bias, or prejudice, and affecting his credit, his answer may be disproved; and if it be intended to contradict him afterwards, it is necessary to remind him of the substance of the conversation, the time, place, and attending circumstances, as far as may be, in order to give him an opportunity to explain before the proof can be offered. These distinctions are recognized and settled in *State* v. *Patterson*, 2 Ire., 346; *State* v. *McQueen*, 1 Jones, 177; *Clark* v. *Clark*, 65 N. C., 655, and other cases.

Says GASTON, J., in *Patterson's case:* "With respect to the subject matter of the witness' evidence, he may be presumed to come prepared to testify with a freshened memory and carefully directed attention; but this presumption does not exist as to collateral matters remotely connected with that subject matter, and justice to the witness, and still more reverence for truth, requires that before he be subjected to the suspicion of perjury he shall have a chance of awakening such impressions in respect thereof as may then be dormant in his memory." So in *McQueen's case*, BATTLE, J., giving his approval to the opinion of Judge GASTON adds: "A witness is never, and ought never to be asked as to any previous statements he has made, directly and immediately material to the issue, when contradictory to what he swore on the trial. Such *statements are allowed to be proved at once* to discredit him. It is only when testimony is introduced to prove his declarations or acts tending to show his bias, feeling, or partiality towards the party introducing him, that the question must be first put to him in relation to such declarations or acts, before the impeaching testimony is allowed to be given."

We have said thus much, though not necessary to the determination of the cause, to correct an erroneous impres-

sion that seems to prevail, as to the extent of the rule that in certain cases requires the mind of the witness to be directed to the discrediting statements before they can be given in evidence.

The second exception is to the exclusion of affidavits of other witnesses taken when the first one was offered in corroboration of their testimony and to support their credit which had been· impeached. The affidavits were rejected for the assigned reason that they were taken after the suit was instituted—"*post litem motam.*" But this is not a restriction upon the admission of evidence of this kind. It is a qualification of the doctrine of hearsay or repute which from necessity is received in certain matters of public and sometimes private interest, where otherwise there would be a defect of proof and when· the reputation is shown to have existed before the controversy arose and there was no motive to misrepresent.

The admissibility of previous correspondent accounts of the same transaction to confirm the testimony of an assailed witness, delivered on the trial, rests upon the obvious principle that as *conflicting statements impair*, so *uniform and consistent statements sustain* and strengthen his credit before the jury. The limitation on the rule contended for in the argument of defendant's counsel, which confines the evidence to such declarations as were made before the witness came under any bias or influence calculated to warp his testimony, is not supported in the numerous adjudications of this court, nor in our opinion by sound reason. The relationship of the witness to the cause or to the party for whom he testifies is one among many sources of discredit, this kind of evidence is intended to remove; and its application to the case supposed is a striking illustration of the usefulness and value of the rule. But its competency is not restricted to such cases.

The evidence is admitted to repel *any imputations* upon the

credibility of the witness whether they spring out of such relationship or arise from proof of general bad character, or of different versions of the fact given by himself or result from the manner in which the cross-examination is conducted. In whatever way the credit of the witness may be impaired, it may be restored or strengthened by this or any other proper evidence tending to insure confidence in his veracity and in the truthfulness of his testimony.

Again, the accuracy of memory is supported by proof that at or near the time when the facts deposed to have transpired, and were fresh in the mind of the witness, he gave the same version of them that he testified to on the trial. Suppose they had been written down and not since seen by the witness, would not the production of the written memorandum greatly confirm one's confidence in the integrity of his testimony to the same facts before the jury? It must be observed, however, that this evidence is not received in proof of the facts themselves, but to sustain the credibility of the witness in what he swears to on the trial. These principles are settled in numerous cases, among which we will only cite the following : *State* v. *George,* 8 Ire., 324; *Hoke* v. *Fleming,* 10 Ire., 263; *State* v. *Dove, Ibid,* 469 ; *March* v. *Harrell,* 1 Jones, 329; *State* v. *Laxton,* 78 N. C., 564; *State* v. *Parish* 79 N. C., 610.

But whatever criticism the rule may be supposed to be obnoxious to, it has become the established law of the state which we would not feel at liberty to question or disturb. Our duty is to administer the law as we find it, approved and enforced by the eminent jurists who have presided in this court and whose labors and learning have illustrated our system of jurisprudence. There is error and there must be a *venire de novo.*

Error.                               *Venire de novo.*