E. BLACK v. A. A. BAYLEES and others.

*Fraud, evidence in—Agent and Principal.*

1. In an action alleging fraud in preventing a fair competition of bid-ders at execution sale, whereby the land was bought at a reduced price, and to subject the land to the payment of plaintiff's debt; *Held*,

(1) It is competent to prove the representations or declarations of de-fendant debtor "that the judgments had been arranged and there would be no sale," thereby inducing the witness not to attend.

(2) Also, to prove as a part of the *res gestæ* that the party who bid off the land got the money from the debtor, who said it was his wife's, and afterwards assigned his bid to the defendant wife.

(3) And also, to prove what the feme defendant had testified on a former trial—whether the same be offered as her admissions or to impeach her testimony. The rule laid down in *Jones* v. *Jones*, 80 N. C., 246, sustained.

2. The acts and declarations of one within the scope of his authority as agent in the purchase of land, are evidence against the principal.

3. No one can set up a benefit derived through the fraud of another, although he may not have had a personal agency in the imposition.

(*Mushatt* v. *Moore*, 4 Dev. & Bat., 124; *Mason* v. *McCormick*, 85 N. C., 226; *Jones* v. *Jones*, 80 N C., 246, and cases there cited; *McComb* v. *R. R. Co*, 70 N. C., 178; *Harris* v. *Delamar*, 3 Ired. Eq., 219; *Goode* v. *Hawkins*, 2 Dev. Eq., 393; *Meadows* v. *Smith*, 7 Ired. Eq., 7, cited and approved.)

CIVIL ACTION tried at Fall Term, 1881, of CLEAVELAND Superior Court, before *Avery, J.*

The facts are as follows: The plaintiff is a judgment creditor of Benjamin Justice. He issues execution on his judgment, and the sheriff of Cleveland county returned, "No goods," &c., and the plaintiff alleges that he is informed and believes that the defendant, Benjamin Justice, has no property liable to execution, or from which the amount due on said judgment can be made, other than his interest in the lands conveyed by him and his wife (M. J. Justice) to the defendant Baylees, and assigned by means of the transfer of the notes for the security of which it was given, to the other defendants, besides Baylees and the Justices.

The lands sought to be subjected to the plaintiff's debt, are described in the complaint, and also the return upon the execution under which the defendant M. J. Justice purchased the land at execution sale.

The plaintiff contended that the land was the property of Benjamin Justice, and by the fraud of Benjamin as agent of his wife, he contrived to have the land bought for her at sheriff's sale at a greatly reduced price, whereby the creditors of Benjamin were defrauded of their rights.

The defendants for their defence relied upon a judgment in favor of A. Williams against Benjamin Justice, regularly docketed in Cleveland county, bearing date prior to the judgment of the plaintiff, an execution, sale, and sheriff's deed for the land in dispute to Mrs. M. J. Justice, and also a mortgage on the said land executed by Benjamin Justice and wife to defendant A. A. Baylees, to secure certain notes therein mentioned, which were afterwards assigned to the other defendants.

The following issues were submitted to the jury:

1. Was the consideration of the deed executed by B. F. Logan, sheriff, to the defendant, M. J. Justice, money belonging to her husband Benjamin Justice? No.

2. Was the defendant Benjamin Justice insolvent when said deed was executed? Yes.

3. Was Benjamin Justice the agent of his wife to procure the purchase of the land in controversy at the sheriff's sale for her? Yes.

4. Did Benjamin Justice by false and fraudulent representations prevent a fair competition of bidders at the sale of the land in controversy? Yes.

5. Was John Falls the agent of M. J. Justice to purchase the land in controversy for her? Yes.

The plaintiff introduced a sheriff's deed from B. F. Logan to Mrs. M. J. Justice dated February the 9th, 1878, embracing the land in the complaint described, to show that she claimed it under her husband.

Plaintiff then offered as a witness A. R. Homesly, who testified that he was acquainted with the lands described in the complaint, and the same were embraced in the deed of the sheriff to Mrs. Justice; that he attended Cleaveland court on Monday and Tuesday of the week in which the sheriff sold the land of Benjamin Justice; that he was at said court as the agent of said plaintiff, Black, who was a creditor of Benjamin Justice, and was authorized by Black to purchase the said land for him, and that on Tuesday of the first week of the court Benjamin Justice approached him and told him that the Williams and Hamrick judgments had been arranged, and that there would be no sale, and thereby induced witness to leave, and that if witness had been present he would have bid for the land as agent for Black, and that the land did not bring its value, and was sold on the Wednesday following to satisfy said Williams and Hamrick judgments. The defendants objected to this testimony, but the objection was overruled, and the defendants excepted.

This witness further testified that the land was offered for sale on Monday and Tuesday and the sale postponed, and that it was after the postponement that Benjamin Justice

34

told him the debt had been arranged, and the land would not be sold.

John Falls, a witness for the plaintiff, testified that he attended the sale and bid off the land, and afterwards assigned his bid to Mrs. Justice. The plaintiff then proposed to prove by this witness that Benjamin Justice, the husband of M. J. Justice, gave him the money to pay off his bid, and that this was in connection with the transaction of making the deed. There was objection by the defendants, which was overruled, and the defendants excepted. The witness testified that Benjamin Justice handed him the money (paper currency) to pay off the bid, and that Benjamin Justice was in embarrassed circumstances, and the general impression was he was failing at that time.

On cross-examination he testified that when Benjamin handed him the money he said it was his wife's money, and that she sent it by him. Witness testified that he contracted with her for some land before she was of age, or married, and paid her for it, and received a deed after she was of full age and married; that he paid her or her agent, Mrs. Hurd, forty seven dollars $\frac{80}{100}$ dollars for the land which was the one-ninth of the land descended to her and others from her father.

This witness further testified, under objection by the defendants, that Mrs. Justice, on her examination in another action tried during the same court (*Black* v. *Justice, ante,* 504,) testified that she sent the money paid by Benjamin Justice to him, and that it was the same money, or part of the same money received by her in 1851 from the witness for her land; that she was married when the money was paid and the title made by herself and husband; that the money was paid in silver by Falls, and that she had kept the silver in her possession, and that she sent her husband Benjamin Justice to witness to get him to buy the land for her. Witness stated that he did not see Mrs. Justice before the sale—

the business in reference to buying the land was done through Benjamin Justice. He further testified that there was a " good crowd " present at the sale; that Gidney, an attorney for Benjamin Justice, said at the sale that he had a mortgage on the land which was then given in evidence, being the same mortgage referred to in the complaint, bearing date December the 4th, 1875. He further testified that the 203 acre tract if unencumbered was worth five dollars per acre.

Logan, the sheriff, testified that the money given him by Falls to pay for the land was " greenbacks."

The defendant introduced in evidence the judgment of A. Williams against B. Justice, docketed in October, 1869, and execution and sale, &c., April 1st, 1876.

Mrs. M. J. Justice was then introduced as a witness for the defence and testified that she was the wife of Benjamin Justice; that the money paid for the land was her money, the price of her interest in land descended from her father, which she received after she was married, in the year 1850 ; that she then told her husband she wanted it to buy her a home, and he agreed to it; that the sum was about $50.00; that she got about the same time five or six hundred dollars from her father's estate; that she kept the $50, and sent it to be paid for the land. It was sent by her husband to Falls whom she selected to buy the land as her agent. She told her husband to employ Falls to buy the land, but does not know what he was to pay Falls for his services; that she received silver from Falls for her land and kept it to buy land; that her husband had bought five or six different tracts of land since 1851, and she was now living on his homestead, and nothing was said by her about the five or six hundred dollars in her examination in the other case, and she was not asked by counsel in that case as to her contract with her husband and the money that came from her father's estate; she is in posses-

sion of both the tracts of land purchased by her at the sheriff's sale of her husband's right and interest therein.

The characters of Mrs. Justice, Homesly, and Falls were proved to be good.

The defendants asked the court to charge the jury :

1. If Mrs. Justice did not authorize her husband to tell Homesly that there would be no sale, and that the debt was settled, she is not to be affected by it.

2. That no fraudulent conduct of Benjamin Justice to suppress biddings, not authorized by the wife, can affect her title.

His Honor declined to give the instructions because, as he said, "they were not necessary on the issues as submitted, and said he would waive the question of law raised by them until the facts bearing upon them were found by the jury, in response to the issues."

The jury responded to the first issue in the negative, but all the others in the affirmative. Judgment, appeal by defendants.

*Messrs. Hoke & Hoke, Battle & Mordecai,* and *Schenck & Cobb,* for plaintiff.

*Messrs. Bynum & Grier,* for defendant.

ASHE, J., after stating the case. The first exception taken by the defendants was to the testimony of the witness Homesly , as to the representations made to him by Benjamin Justice in regard to the sale of the land. This exception, we think, was properly overruled. The very gist of the action is that Mrs. Justice claimed the land from Benjamin Justice, and that he by fraudulent representations prevented a fair competition of bidding at the sale, whereby his wife was enabled to buy the land at a grossly reduced price. The evidence was relevant and very material to the inquiry, and therefore admissible.

The second exception to the evidence that the defendant

Mrs. Justice gave her husband the money to pay off the bid of Falls for the land, is equally untenable as the last. It was a part of the *res gestæ*, and on that ground was admissible, if no other, but was admissible also on the ground that it was pertinent to the first issue, and as a material circumstance in the charge of fraud as affecting the deed obtained by Mrs. Justice from the sheriff.

There was no error in overruling the third exception. Whether the testimony of Falls as to what Mrs. Justice had sworn to on a former trial, between the plaintiff Black and herself and husband, was offered as her admissions simply, or for the purpose of impeaching her testimony, it was equally competent.

As admissions; it is always competent to prove what the opposite party has admitted, whether upon oath in a judicial proceeding or in conversation, as for instance, what a party has admitted in answer to a bill in equity, or upon examination before a commissioner in bankruptcy, and what is stated in an affidavit to obtain a *certiorari*, has been held to be admissible to prove any facts, which are of a character to be proved by mere admissions or representations. *Mushatt* v. *Moore*, 4 Dev. & Bat., 124; *Mason* v. *McCormick*, 85 N. C., 226; 2 Starkie Ev., 222; 1 Greenl. Ev., § 527.

And as for the purpose of impeaching the testimony of Mrs. Justice, if it could have been offered for any such purpose before she was examined; it was competent without putting her on her guard, by asking her the preliminary question, whether she had not sworn to the facts proposed to be proved on a former trial. The testimony was material, and when that is the case, it has been held that the preliminary questions need not be propounded before offering the contradicting evidence. The rule as laid down by the more recent decisions of this court, seems to be, that when the testimony or declarations which it is proposed to contradict, are pertinent and material to the pending enquiry, the con-

tradicting testimony may be offered without any previous intimation, to the party sought to be impeached, of its existence or nature; but if the testimony offered to be contradicted is collateral merely, the answer of the witness is conclusive, except when the collateral matter consists in acts or declarations of the witness, indicating temper, bias, or prejudice, and affecting his credit; in such cases his answers may be disproved, but before it can be done he must be reminded of the substance of the conversation or declaration, the time, place and attending circumstances. *Jones* v. *Jones*, 80 N. C., 246; *State* v. *Patterson*, 2 Ired., 346; *State* v. *McQueen*, 1 Jones, 177; *Clark* v. *Clark*, 65 N. C., 655.

The only other exception is, to the refusal of His Honor to give the instructions asked. We cannot see how these instructions are pertinent to any of the issues submitted to the jury, or embrace any principle of law applicable to the facts of the case as found by the jury.

The jury found the facts that Benjamin Justice was insolvent at the time of the sale by the sheriff—that he was the agent of his wife in procuring the land to be bid off for her—and' that by his fraudulent representations he prevented a fair competition at the sale, and thereby enabled his wife to buy his land for a trifling sum compared to its true value.

As the agent of Mrs. Justice in conducting the transaction in regard to the purchase of the land, whatever was said or done by Benjamin Justice within the scope of his authority, was evidence against her. *McComb* v. *N. C. Railroad Company*, 70 N. C., 178. But aside from that view of the case, the defendant M. J. Justice claimed the land under her husband Benjamin Justice; the false representations made by him to Homesly the agent of Black, the plaintiff, whereby he prevented him from bidding at the sale was a fraud upon his creditors—a fraud upon Black, who was one of his creditors. And it is held that no one can in equity

be permitted to set up a benefit derived through the fraud of another, although he may not have had a personal agency in the imposition. *Harriss* v. *Delamar*, 3 Ired. Eq., 219; *Goode* v. *Hawkins*, 2 Dev. Eq., 393; *Meadows* v. *Smith*, 7 Ired Eq., 7. The principle decided in these cases is decisive of the questions involved in this case.

We therefore hold there is no error, and that the judgment of the court below must be affirmed.

No error. Affirmed.