## STATE *vs.* W. H. JONES.

It has been accepted as the proper construction and meaning of the act of 1796, Rev. Code, chap. 31, sec. 30, though it goes beyond the words : that a Judge in charging a jury shall state the evidence fairly and impartially, and that he shall express no opinion on the weight of evidence.

Wherever there is an exception to the charge of a Judge for violating the act, it will not be sufficient to show, that what he did or said *might* have had an unfair influence, or that his words, critically examined and detached from the context and the incidents of the trial, were *capable* of a construction, from which his opinion on the weight of testimony might be *inferred ;* but it must appear, with ordinary certainty, that his manner of arraying and presenting the evidence was unfair, and likely to be prejudicial, or that his language, when fairly interpreted, was likely to convey to the jury his opinion on the weight of the testimony.

It is not error to keep a jury together, in case of disagreement, until the end of the term. It is the duty of the Judge to keep them together as long as there is a reasonable prospect of agreement.

The following statement of the case was sent to this court :

This was an indictment for larceny tried before *Cloud, J.,* at Spring .Term A. D. 1872, of FORSYTHE Superior Court. The charge was, that the defendant had stolen a horse. In the progress of the trial, a witness for the State was asked if he had not been indicted and convicted for stealing plank, and if he had not left the country in consequence of it. He answered, that he had been indicted for taking plank, but did not steal it and did not run away. The Solicitor testified that the witness had been indicted for defacing and taking plank from a public school house. The record showed that the indictment was for a misdemeanor. The defendant's counsel argued that whether the indictment was for trespass or larceny, it was the same in its effect upon the character and credibility of the witness. His Honor charged the jury that it was not larceny in

law. The same witness stated that about two years before he was at Smith Grove in the county of Davie, about twenty miles from Salem, from which place the horse had been taken on Sunday night, that in the morning, about 9 o'clock, he saw two men ride up from the direction of Salem with the horse in question ; that the horse was much jaded. He thought the mail had just come in, and there was a crowd about the post office. Upon cross examination, witness said he was not certain what day it was ; did not know whether the mail had come or not ; thought it had. It was in evidence that there was a mail line from Salisbury to Huntsville by way of Smith Grove, that the mail would arrive at the latter place on Mondays, Wednesdays and Fridays, about two or three o'clock in the afternoon, and returning on Tuesdays, Thursdays and Saturdays, would arrive at that place about 9 o'clock in the morning. The defendants counsel argued, that from all the attendant circumstances, the day of which the witness had spoken must have been Monday.

His Honor in charging the jury told them that it was not in *proof* what day it was. His Honor after summing up, as he said, the substance of the testimony, repeated that portion which was most unfavorable to the defendant, and stated to the jury twice, that these were the parts, taken all together, upon which the State relied for a conviction, but failed, at that time, to report that portion of the testimony which was most favorable to the defendant, and did not call the attention of the jury to the facts upon which the defendant relied for his argument, but told the jury that they must be fully satisfied, that they must consider all the testimony in the cause, and that the testimony offered, on the part of the State, must be of such a character as to satisfy them beyond a reasonable doubt, of the defendant's guilt, before they would be warranted in returning a verdict of guilty.

The jury after being out about twenty-four hours, reported that they could not agree, but desired no instructions from the

Court. His Honor told them they *must* agree, and that they must try again ; that in another county he had kept a jury from Saturday until the following Wednesday, when they agreed ; that it was important to the country that they should agree. This was said on Saturday evening. The jury retired and soon thereafter applied to the sheriff, to know how long he thought the Judge would detain them if they did not agree ; the sheriff replied they had heard what the Court said. Very soon thereafter, the jury returned a verdict against the defendant. The Solicitor argued to the jury, that it was very important to the country that the prisoner should be convicted. The language of his Honor, "that it was important to the country that the jury should agree," when taken in connection with the argument made by the Solicitor, was excepted to by the defendant ; There was a verdict of guilty ; Rule for a new trial ; Rule discharged. Judgment and appeal.

*Attorney General,* for the State.
*Scales & Scales,* for the defendant.

RODMAN, J. The following is the Act on which all the exceptions of the prisoner are founded.

" No Judge, in giving a charge to the petty jury, shall give an opinion whether a fact is fully or sufficiently proven : such matter being the true office and province of the jury ; but he shall state, in a plain and correct manner, the evidence given in the case, and declare and explain the law arising thereon." C. C. P., S. 237. This setion is but a renewal of an Act Rev. Stat. ch. 31, S. 136. (Rev. Code, ch. 31, S. 30.)

This has been held to mean, that the Judge shall state the evidence fairly and impartially ; and that he shall express no opinion on the weight of the evidence. This construction, in the last particular, goes beyond the words of the Act, but it is accepted as a proper one. Whenever it appears that a Judge has arrayed and presented the evidence unfairly and partially,

to the prejudice of a party, or has intimated his opinion as to the weight of the evidence, this Court will not hesitate to grant a new trial for the irregularity. But when an exception is for that he did either one or the other, it would not only be unfair to him, but unreasonable, and prejudicial to justice, to presume that he was unfair, or meant to violate the Act. In such a case, it will not be sufficient to show that he did, or said, what *might* have had an unfair influence, or that his words, when critically examined and detached from the context and from the incidents of the trial, are capable of an interpretation from which his opinion on the weight of the testimony may be inferred; but it must appear with ordinary certainty that his manner of arraying and presenting the testimony was unfair, and likely to be prejudicial to the defendant, or that his language, when fairly interpreted, in connection with so much of the context as is set out in the record, was likely to convey to the jury his opinion of the weight of the testimony.

We will now proceed to test the exceptions by this rule:

1. " In the progress of the trial, a witness for the State was asked the question, if he had not been indicted and convicted for stealing plank, and if he had not left the country in consequence. He answered, he was indicted for taking plank, but did not steal it, and did not run away. The solicitor testified, that he was indicted for defacing and taking plank from a public school house, under the statute, and the record showed he was indicted for a misdemeanor. The defendant's counsel argued, that whether the offence was in law tresspass or larceny, it was the same in its effect upon the character and credibility of the witness. His Honor charged the jury that it was not larceny in law."

We are unable to see that in this the Judge intimated any opinion as to the credit of the witness, or did anything more than his duty. It was due to the witness and to the jury, to say that the offence was not larceny, while he permitted the

counsel for the prisoner to argue that it was as bad, and left the question of credit entirely to the jury.

2. The same witness testified that about 9 o'clock on a morning about two years ago he was at Smith's Grove, and saw two men ride up with the stolen horse; that he thought the mail had just come in, &c. The defendants' counsel argued from the usual time for the arrival of the mails, that the day spoken of by the witness was Monday. His Honor in charging the jury told them it was not *in proof* what day it was. The words "in proof" are ambiguous. They may mean that there was no evidence tending to prove that the day was Monday; in which case we can only say that none is set out in this record; or that there was no direct evidence to that effect; and it is admitted there was not. If the counsel for the prisoner had desired a more unequivocal ruling, he should have asked for it. We do not see any error here.

2. His Honor after summing up as he said the substance of the testimony, repeated that portion of it which was most unfavorable to the prisoner, and stated to the jury twice that these were the *facts* taken altogether upon which the State relied for a conviction, but failed *at that time to repeat* that portion of the testimony which was most favorable to the prisoner, and failed to call the attention of the jury to the facts taken altogether upon which the prisoner relied for his acquittal, but told the jury that they must be fully satisfied, that they must consider all the testimony in the cause, &."

We must understand from this that the Judge *once* stated fairly the substance of the testimony on both sides, and afterwards repeated that on the part of the State, massing it altogether. From this, and from his omitting to repeat and mass together the testimony for the prisoner, he would have us infer that the Judge was unfair, and intimated his opinion to the jury. The most that we can say is, that *it is possible* that the Judge's manner of arraying and presenting the testimony was unfair, but we can not see that it was so. We cannot pre-

scribe how many times the Judge shall go over the testimony, or in what order or style he shall state it. Each adopts that which is most natural to him. There must be some clear proof that an unfair effect was likely to be produced by the mode adopted before it can be censured.

4. It is also complained that the Judge used the words "facts," when he ought to have said "circumstances in evidence," or "alleged facts," or other expression implying that it was for the jury to decide whether they were facts or not. It must be conceded that the phrase suggested would have been more correct, but there is no reason to think that the incorrect word misled the jury, or was understood by them as taking away their power to say whether the matters in evidence were facts or not; for the Judge immediately proceeds to say that they are to consider all the testimony and be fully satisfied, &c.

5. The jury, after having been out about twenty-four hours, reported that they could not agree. "His Honor told them they must agree, and that they must try again; that in another county he had kept a jury from Saturday until the following Wednesday, after which time they had agreed." Very soon after this they returned their verdict against the prisoner.

It cannot be questioned that the Judge has a right to keep a jury together to the end of the term, and that it his duty to keep them together as long as there is a reasonable prospect of their agreement. Formerly, jurors were deprived of meat and drink to compel an agreement. The practice is not so harsh now. But it has never been supposed prejudicial to justice to put jurors under that slight pressure to an agreement, which results from keeping them away from their homes and accustomed comforts. We see no impropriety in the Judge reminding the jury of his power and duty in this particular, nor that it had any tendency unfavorable to the prisoner; for the jury might have released themselves by a verdict for, as well as by one against him.

7. "The counsel for the State argued to the jury that it was very important to the country that the prisoner should be convicted; and the language of his Honor, that it was important to the country that the jury should agree, when viewed in connection with this argument, was excepted to by the prisoner."

We think it impossible for a jury to have misundersood his Honor's language, legitimate and proper as it was, in the way suggested.

There is no error. Judgment affirmed. Let this opinion be certified, &c.

PER CURIAM.                    Judgment affirmed.