## STATE v. JAMES LAXTON.

*Indictment—Rape—Trial and Incidents—Province of Jury—Evidence.*

1. On a trial for rape, the prosecutrix, while testifying as t) the circumstances of the crime, hesitated and wept ; whereupon the Court directed her to proceed, saying, "you need not use language that will shock your modesty ;" *Held*, not to be error.

2. On such trial, the mother of the prosecutrix, while testifying before the jury, held down her head seemingly much affected, and spoke in a low voice ; prisoner's counsel thereupon asked the Court to require her to hold up her head and speak louder ; the Court declined to compel the witness to hold up her head, but said that she would be required to speak loud enough to be heard, at the same time remarking to counsel, that "some allowance must be made for the woman as she is overcome with emotion ;" *Held*, not to be error ; such a remark was not an invasion of the province of the jury within the purview of C. C. P. § 237.

3. During such trial, certain members of the family of the prosecutrix sat within the bar and occasionally wept during the argument of the prosecuting counsel, and withdrew when the prisoner's counsel addressed the jury ; *Held*, that any action in the matter was within the sound discretion of the presiding Judge and not subject to review in this Court.

4. On a trial for rape, where the testimony of the prosecutrix was impeached by proof of inconsistent statements made by her on the preliminary trial before a Justice of the Peace, it was competent for the prosecution in corroboration to prove the declarations of such witness on the day following the commission of the crime.

5. An indictment for rape, which charges that the prisoner " * * * in and upon one N, in the peace of God and the State then and there being, violently and feloniously did make an assault, and her the said N then and there violently and against her will did ravish and carnally know," &c., is sufficient.

(*State* v. *Jones*, 67 N. C. 285 ; *State* v. *Davis*, 4 Dev. 612 ; *State* v. *Harris*, 1 Jones 190 ; *State* v. *Williams*, 2 Jones 194 ; *March* v. *Harrell*, 1 Jones 329, cited and approved.)

INDICTMENT for Rape, removed from Caldwell and tried at

STATE *v.* LAXTON.

Spring Term, 1877, of IREDELL Superior Court, before *Schenck, J.*

The prisoner was indicted in the following words : The jurors, &c., present that James Laxton, &c., with force and arms in and upon one Nancy L. Barlow in the peace of God and the State then and there being, violently and feloniously did make an assault, and her the said Nancy L. Barlow then and there violently and against her will, feloniously did ravish and carnally know, against, &c.

The case is sufficiently stated by THE CHIEF JUSTICE in. delivering the opinion of this Court. Verdict of guilty.. Judgment. Appeal by the prisoner.

*Attorney General* for the State.
*Messrs. G. N. Folk* and *R. F. Armfield* for the prisoner:.

SMITH, C. J. The prisoner is charged with the crime of rape committed on the body of Nancy Barlow in Caldwell County, in the month of April, 1876. Upon his application the cause was removed to Iredell County, and there, upon the trial, a verdict of guilty was found by the jury and judgment of death pronounced from which he appeals to this Court. Several exceptions set out in the record were taken by the prisoner's counsel during the progress of the trial,. and have been argued before us. We have given them a careful consideration, in view of the. important results to the prisoner, depending upon the conclusions at which we may arrive.

It appears from the testimony of the prosecutrix, Nancy Barlow, an unmarried girl of seventeen years of age, that she was alone on Good Friday night, April 14th, 1876, at the house in which her mother, herself, and other female members of the family resided, the others having left to spend the night elsewhere ; that she had just finished her supper and was putting the glass upon a shelf when she·

heard the prisoner's voice at the door, calling her, and upon her not answering, repeating the call; that she then went to the door and opened it, when the prisoner seized her by the arm and jerked her out of the house; that in her alarm she exclaimed " Lord have mercy, what are you going to do with me;" that the prisoner made no reply and proceeded to raise her clothes, when understanding his object she begged him to kill her with the axe rather than outrage her person, and screamed; that the prisoner put his hand over her mouth and suppressed her cries and forced her down upon a bench that stood near the door outside.

At this stage of the narrative the witness hesitated and wept. The Court several times directed her to proceed and remarked, " you need not use " or " I will not require you to use language that will shock your modesty." The witness then said, " he had his will with me." To this remark of the Judge no objection was made at the time by the prisoner's counsel. The witness then proceeded to say that she fainted and became insensible for a time, and when she recovered her consciousness she found herself on the bench, the prisoner in front of her; that she tried to walk to the door and was not able to do so and the prisoner pushed her in the door; that she remained in the house during the night, sleepless and undressed; and that on her mother's return in the afternoon of the next day, on her knees she communicated all the facts to her. The witness was cross-examined by the prisoner's counsel and the truth of her statements called in question by the manner in which the examination was conducted and the questions propounded to her.

Louisa Barlow, mother of the prosecutrix, introduced by the State, testified that upon her return home Saturday afternoon, she found her daughter in distress, and weeping; and learned from her the particulars of the outrage of the previous night which she then proceeded to repeat. When the witness came to speak of her daughter's entreaty that

the prisoner would take her life rather than violate her person, the witness held down her head and seemed to be much affected and spoke in a low tone. Thereupon the prisoner's counsel asked the Court to require the witness to hold up her head and speak louder. The Judge said he would not compel her to hold up her head, but would require her to speak loud enough to be heard, adding, "some allowance must be made for the woman as she is overcome with emotion." To this remark the prisoner's counsel excepted.

To contradict the testimony of the prosecutrix, the prisoner's counsel offered in evidence her examination taken before the Justice of the Peace before whom the prisoner after his arrest was brought. The Solicitor for the State then proposed to prove the account of the matter given by the prosecutrix to her mother after her return home, as concurring with and corroborating her testimony, and as affecting her credit. This on objection of the prisoner was admitted by the Court.

It is stated in the case that the mother and others of her family sat within the bar during the delivery of the argument for the State, and occasionally wept when reference was made to the enormity of the crime and its consequences to the prosecutrix, and that they withdrew when the prisoner's counsel were addressing the jury; but no complaint was made or objection offered during the trial, and so far as the Court observed, none of these persons were guilty of any improper conduct, nor did their weeping attract general attention.

The exceptions appearing on the record, and which will be understood from the foregoing statement of what transpired at the trial, are few in number, and will be separately considered :—

1. The remark of the Judge that he would not require the prosecutrix in giving in her evidence to use language that would shock her modesty. We find nothing in this

effort of the Judge to maintain the proprieties of the court room, and nothing in what he said, of which the prisoner can rightfully complain. Judicial investigations often involve inquiries into matters of a delicate nature, and vulgar words should never be required of a witness where the truth can be conveyed with equal clearness and accuracy in proper and becoming language. It is the duty of the Judge to preserve the dignity of the Court, and to see that the decencies of life are not needlessly violated.

2. The remark of the Judge, when refusing to require the witness, Louisa Barlow, to hold up her head,—"that she was overcome with emotion." We think this exception also untenable. The remark was addressed to counsel, and was only intended to give the reason of the Court for not enforcing what seemed under the circumstances a harsh requirement. The emotion of the witness was manifest to the jury as well as to the Judge, and had he made the order as requested, it would have been as strong an intimation of opinion that the emotion was assumed, and thus impaired the force of her testimony, as his refusal to make the order indicates a belief that it was real, and thus tends to support her credit. If the refusal is susceptible of a construction unfavorable to the prisoner, it is a consequence incidental to the exercise of judicial functions, and inseparable from jury trials. Had the witness fainted or become sick while giving in evidence, the objection would apply with equal force to the action of the Judge in directing a physician to be called in to prescribe for her. But these are not within the purview of the Act of 1796; re-enacted C. C. P. § 237. The Act forbids a Judge in *giving a charge to the jury* "to give an opinion whether a fact is fully or sufficiently proved, such matter being the true office and province of the jury," and directs him "to state in a plain and correct manner the evidence given in the case and explain the law arising thereon." In the cases to which our

attention has been called in the well prepared brief of the prisoner's counsel, it will be observed that the obnoxious matter is contained in the charge to the jury, or in the Judge assuming to decide a fact which should have been left to them.    And even in such case, it is not sufficient to invalidate a verdict to show that " what the Judge said or did *might* have had an unfair influence; or that his words, when critically examined and detached from the context and the incidents of the trial, are capable of an interpretation from which an opinion on the weight of the testimony may be inferred ; but it must appear with ordinary certainty that his manner of arraying and presenting the testimony was unfair, and likely to be prejudicial to the prisoner; or that his language, when fairly interpreted in connection with so much of the context as is set out in the record, was likely to convey to the jury his opinion of the weight of the evidence." RODMAN, J., in *State* v. *Jones,* 67 N. C. 285.

So it has been held not to be a violation of the Act for a Judge to say that a witness had given a fair and candid statement and appeared to be creditable, when the statement is admitted to be correct; or to commend and eulogize a witness, when the case shows the witness was unimpeached.    *State* v. *Davis,* 4 Dev. 612 ; *State* v. *Harris,* 1 Jones 190 ; *State* v. *Williams,* 2 Jones 194.

While we do not wish to be understood as putting a construction upon the Act that excludes from its operation the expression of an opinion upon a matter that belongs to the jury made at any time during the progress of the trial and in their hearing, for in such case we think it does apply, yet, it is quite obvious from the words of the Act that its special object was to prevent the intimation of such opinion in connection with and constituting a part of the instructions by which the jury were to be governed, and when its influence on their minds would be direct and effective. It was

this evil that the Act was more particularly intended to correct, and it becomes our duty when its mandate has been disregarded, to set aside a verdict which the opinion may have contributed to bring about. We think the Judge did not invade the province of the jury in speaking of the manifest and visible emotion of the witness when called on by the prisoner's counsel to interfere.

3. It is further objected that the Judge should not have permitted the witnesses to remain in the court room and make demonstrations of feeling calculated to excite the sympathy of the jury and warp their judgment. But he was not asked to order the removal of the witnesses, and if he had been, we are not prepared to say his refusal would have been an error that would entitle the prisoner to a new trial. In the conduct of jury trials, much must necessarily be left to the judgment and good sense of the Judge who presides over them, and it is not every inadvertence or casual remark which may escape him in his conversation with counsel, or in preserving order and decorum, that is sufficient to invalidate the action of the jury and defeat the ends of justice. We think his action in this matter rested in the sound discretion of the Judge, and is not subject to our revision.

4. The prisoner's counsel further insisted that it was error to allow Louisa Barlow to testify to the account of the transaction as detailed to her by her daughter on the day following, in respect of the credit of the latter and as corroborative of her testimony. But this was permitted only after her testimony had been impeached, and we deem it only necessary to refer to a single case where the competency of such evidence is fully established. *March* v. *Harrell,* 1 Jones, 329.

5. Nor can the motion in arrest of judgment be allowed. The indictment in form embodies the averments necessary

to constitute the offence and the verdict ascertains them to be true. The exceptions are overruled.

No error.

PER CURIAM. · Judgment affirmed.