STATE v. LAFAYETTE GAY.

*Evidence—Handwriting—Witness—Degrading Questions.*

1. Where a witness to prove that a certain letter was in the handwriting of the defendant, testified that he had often seen the defendant write, and knew his handwriting, he is competent to express an opinion as to whether the letter in controversy was written by the defendant.

2. In all cases, questions tending to disparage or disgrace a witness may be asked, provided they are limited to particular acts, but even then, when it is apparent to the Court, that they are put merely for the purpose of annoying or harrassing the witness, the trial Judge may in his discretion, refuse to compel him to answer, but such refusal is a legitimate subject of comment before the jury.

3. Where a witness was asked, with a view to discredit him, whether he had ever had sexual intercourse with any woman except his wife, since his marriage; *It was held,* that the question was too general and was not allowable in this form, and that it was not error to refuse to compel the witness to answer.

4. Where the Judge admits evidence to which exception is made, and afterwards excludes it, and instructs the jury not to consider it, the exception to such evidence will not be considered in this Court.

5. Where his Honor charged the jury, that evidence had been offered to show that a witness had been for many years a man of unblemished life, (as had been offered as to a witness in the case), those years, if the jury believed the evidence, in which he had trod the paths of truth and probity, should speak for him, but he further charged, that the jury were the sole judges of the facts, and they could believe or disbelieve any or all of the testimony; *It was held,* not to be any expression of opinion, and free from error.

6. It is not error for the Judge to state to the jury a proposition which is universally admitted, and so it is not error for him to say to them, that the testimony of a witness who proved a good character, is entitled to more weight than the testimony of one who has been shown to be of bad character.

(*State* v. *Patterson,* 2 Ired., 346; *State* v. *Garrett,* Busb., 357, cited and approved).

INDICTMENT, tried before *Clark, Judge,* and a jury, at November Special Criminal Term, 1885, of WAKE Superior Court.

The defendant Lafayette Gay, and one Mary Patterson, were jointly indicted and tried for the offence of fornication and adultery.

One Strickland, a State's witness, testified that he had on several occasions seen the two defendants lying together on the same bed.

Other witnesses for the State, testified to circumstances tending to show adulterous intercouse between the two defendants.

For the defence, the female defendant was introduced as a witness, and swore that the State's witness (Strickland) was the father of her child, then aged about twelve months; that he, (Strickland,) was the only person that had ever had sexual intercourse with her; that she had allowed his sexual embrace five times, and that she refused to permit them any further, although no quarrel or unkind feeling had arisen between her and him.

The State introduced as a witness, one Hunter, who testified that said female defendant had admitted to him, that the defendant Gay was the father of her said child. The State then proposed to produce in evidence, a certain letter addressed to the witness Hunter, and received by him from the post office, which letter was dated at Atlanta, Georgia, and signed "Lassiter." In this letter, the writer expressed a desire to see the said female defendant and her baby, and a request to Hunter to have them sent to him at Atlanta. Preliminary to putting the letter in evidence, the witness was asked if he had often seen Gay write, and if he was therefore acquainted with his handwriting. To this, the witness answered, that he had often seen the defendant Gay writing at the counter in Gay's store—Gay standing on one side of the counter, and witness on the other—and that he thought from his having seen him writing on such occasions, that he knew his handwriting; that he could see the writing plainly, although he had not given the writing on such occasions a very close examination. The evidence was objected to by the defendant Gay, but the objection was overruled, and the evidence was admitted. The witness then testified that he knew no such person as the Lassiter named, and that the handwriting of the letter, and the signature, were in his opinion, the defendant Gay's, and the letter was allowed to be read, and the defendant Gay excepted.

Preliminary to the admission of said letter, J. G. Brown testified, as an expert, without objection, on comparison of the writ-

ing with the writing of said Gay, admitted to be genuine, that in his opinion the letter was in the same handwriting.

George H. Snow, a witness for the State, testified that the character of the witness Strickland was excellent. On cross-examination, he was asked by the defendant's counsel, if he had seen an article in a Charlotte newspaper, stating that the witness Strickland had gone to Atlanta, Georgia, with a requisition for the arrest of the defendant Gay, and that having arrested Gay, he allowed him to escape at Charlotte; and that he, the witness Strickland, was the seducer of a young girl named Hicks, whom he brought back home from Atlanta with him. To this, the witness answered, that he had seen the article, but did not believe a word of it.

Then the witness Strickland was recalled, and testified that he was not the father of the child, and never had had any sexual intercourse with the female defendant. He was asked, on cross-examination, if he had never had sexual connection with any woman, except his wife, since he was married, which he declined to answer, upon the ground that it tended to criminate and degrade him; and the Solicitor for the State objected to the question. The counsel for the defendant, asked the Court to compel the witness to answer, stating that the question was asked to discredit the witness. This was refused by the Court, and the defendant excepted. The witness Strickland, was then asked by the counsel for the defendant, if he had not seduced the young girl Hicks, and run her off to Georgia. To this he answered he had not, but that she had been abducted from his house and carried there. On further cross-examination, he was asked if he had not gone to Atlanta, with a requisition for defendant Gay, from the Governor of this State, and after capturing Gay, allowed him to escape at Charlotte, and to this he answered, that he had arrested Gay on the requisition, and that Gay had escaped from him at Charlotte, but without his knowledge or consent. On the re-direct examination, he was asked to explain all about the capture of Gay, and the manner of his arrest and

escape, which was objected to by the defendant, objection over-ruled and defendant excepted. The witness then testified, that he proceeded to Atlanta with the requisition for the defendant Gay; that he captured him there, and also found the girl Hicks there; that the defendant Gay employed counsel on his being arrested, and that the girl Hicks informed him, (witness), in Gay's presence, that he, Gay, had influenced her to say to Gay's lawyer, and agree to testify, that the witness had seduced her, and to say further, that the witness had made a conspiracy with her to have Gay arrested under a false charge; that as soon as the girl made this confession to witness, the defendant Gay demanded of her certain money, which she then said to witness, in Gay's presence, that Gay had given her to swear falsely against witness. Exception by defendant.

The Court ruled out all the evidence elicited by the defendant regarding the newspaper report, and all the testimony of Strickland called out by the State in reply, regarding the arrest and escape of Gay and the declarations of the girl Hicks, and instructed the jury not to consider the testimony so ruled out.

Among other things in regard to the character of a witness, the Court charged the jury, that it was a rule of law, based upon ordinary observation in life, that in passing upon contradictory statements, men could take into consideration the character of the parties making such statements; that when testimony had been offered to show that a witness had been for many years a man of unblemished life, as had been offered as to the witness Strickland, those years, (if the jury believed the evidence), in which he had trod the paths of truth and probity, should speak for him; and if the jury believed that the character of the witness was bad, they were entitled also, to consider that; but notwithstanding that, the jury are the sole judges of the facts, and could believe the whole, or a part of any witness' evidence, or reject it altogether, according to the convictions made upon their minds of the truth of his statements. The defendant excepted to this part of the charge, upon the ground that it was an intimation by

52

the Court upon the weight of the evidence of the witness Strickland.

. There was a verdict of guilty, and judgment, from which the defendant Gay alone appealed.

*Attorney- General* for the State.
*Mr. Thos. M. Argo* for the defendant.

ASHE, J., (after stating the facts). The first exception taken by the defendant, was to the admission by the Court of the testimony of Hunter, as to the genuineness of the handwriting of the defendant Gay.

We think the testimony of the witness Hunter, came up to the requirements of the law in such cases. He testified that he had frequently seen him writing, and that he knew his handwriting, and it was his opinion that the letter offered in evidence was in the handwriting of the defendant Gay.

The next exception, was to the refusal of the Court to compel the witness Strickland to answer the question propounded to him on cross-examination by the defendant, "if he had never had sexual intercourse with any woman, except his wife, since he was married." The character of the witness had been proved to be excellent, and when this question was propounded, he refused to answer, on the ground that it tended to criminate and disgrace him. The question was put, as stated by defendant's counsel, to discredit the witness. The Court refused to compel the witness to answer.

On this question, there has been a very great diversity of opinion, both in the Courts and among text writers. In this State, while it has been held that a question may be asked a witness which tends to degrade him or bring him into disgrace, it has not been directly decided that he shall be compelled to answer such questions. The case of *State* v. *Patterson*, 2 Ired., 346, and *State* v. *Garrett*, Busb., 357, were cited by the defendant's counsel, as sustaining the doctrine. In the former case, the

question was referred to as doubtful, and was not directly presented, and the Court on that point only say, that "questions to a witness, tending to disparage or disgrace him, may be asked, and cannot be objected to by the opposite party. Whether the witness is bound to answer them, is doubtful." In the latter case, the Court, referring to the case of *State* v. *Patterson, supra,* says, "it is settled by that case, that such a question may be asked, and the Court in that case were inclined to the opinion, though they did not so expressly decide, that when the question tended only to the disparagement or disgrace of the witness, but not to expose him to a criminal prosecution, he was bound to answer," and in *Garrett's* case, the Court goes no further than to say : "We are inclined to think with the very eminent Judges who decided the case of *State* v. *Patterson,* that it follows as a necessary consequence, that the witness is bound to answer. But if that be not so, and it is admitted that the witness may refuse to answer, yet we hold that such refusal is the proper subject of comment to the jury." Yet, notwithstanding these observations by the Court in that case, the witness was not compelled to answer in the Court below, and its ruling was sustained by this Court. So that, without any decision on the question, we have only the intimations of the Court, and with that exception, it is an open question in this State.

Mr. Wharton, in his work on *Criminal Law,* says : "The weight of authority seems to tend to the opinion, that when the transaction to which the witness is interrogated, forms any part of the issue to be tried, the witness will be obliged to give evidence, however strongly it may reflect on his character." On the other hand, it has been held, that " when a witness is asked a question, the answer to which would disgrace him, but could have no bearing on the issue, except so far as it might impeach his credibility, he is priviledged from answering," and he is supported in this view of the law by Mr. Greenleaf and Mr. Taylor, see 1 *Greenleaf on Evidence,* §1313, and in §1314, the author gives expression to his own opinion as follows : " No doubt, cases

may arise, when the Judge may, in the exercise of his discretion, very properly interpose to protect the witness from unnecessary and unbecoming annoyance. For instance, all inquiries into discredible transactions of a remote date, might, in general, be rightly suppressed, for the interests of justice can seldom require that the errors of a man's life, long since repented of and forgiven by the community, should be recalled to remembrance at the pleasure of any future litigant. So, questions of alleged improprieties of conduct, which furnish no real ground for assuming that a witness who could be guilty of them, would not be a man of veracity, might very fairly be checked."

This we think is a reasonable solution of the difficulty in coming to a correct conclusion from the conflicting opinions on this question, and the rule to be deduced is, that in all cases, questions tending only to disparage or disgrace a witness, may be propounded, provided they are limited to particular acts, but even then, when it is apparent to the Court that they are put for the purpose merely of annoying or harrassing the witness, the Court may, in its discretion, refuse to compel him to answer them— though should the witness decline to answer, his refusal may be a legitimate subject of comment before the jury. But in no case do we think it is allowable to put such a question in the general form in which it was propounded in this case.

The third and fourth exceptions are not to be considered, as the Court ruled out all the evidence upon which they are founded.

The last exception of the defendant, was to that part of his Honor's charge, in which he alluded to the testimony of Strickland, upon the ground as alleged, that it was in violation of the Act of 1796. We do not think the charge is obnoxious to the objection.

The witness Mary Patterson, had sworn that Strickland had had connection with her, and was the father of her child. The witness Strickland swore that he was not the father of her child, and had never had sexual intercourse with her, and his general

character was proved to be excellent, and after the witness Mary Patterson had sworn that Strickland was the father of her child, it was testified by the witness Hunter, that she had admitted to him that Gay was the father.

In charging the jury, his Honor, in substance, told them in the out-set, that he had no right to express an opinion upon the weight of the testimony. That when a witness had proved a good character, as Strickland had done, it was a matter for the jury to take into consideration, and so when a witness' character was shown to be bad, that was a matter also to be taken into consideration, but, notwithstanding that, they were the sole judges of the facts, and could believe the whole or a part of the evidence of any witness, or reject it altogether, according to the conviction made upon their minds of the truth of the witnesses.

He refrained from expressing an opinion upon the weight of the testimony. But even if his charge could be held to mean, that the testimony of a witness who had proved a good character, was entitled to more consideration than that of a witness who is shown to be of bad character, it is a proposition in accordance with the experience of all men.

It cannot be error to state a proposition to the jury, which is universally admitted.

There is no error. Let this be certified to the Superior Court of Wake county, that further proceedings may be had according to law.

No error.                                    Affirmed.