MEADOWS v. WESTERN UNION TELEGRAPH COMPANY.

(Filed September 30, 1902.)

OPINION ON EVIDENCE—*Negligence—Instructions—Telegraphs—The Code, Sec. 413—Mental Anguish.*

In an action against a telegraph company for negligence in delivering a message, it is error for the court to refer in its charge to the "*proverbial slowness of the messenger boy.*"

CLARK, J., dissenting.

ACTION by W. D. Meadows against the Western Union Telegraph Company, heard by Judge *Francis D. Winston,* at February Term, 1902, of the Superior Court of CRAVEN County. From a judgment for the plaintiff, the defendant appealed.

*D. L. Ward,* for the plaintiff.
*W. W. Clark,* and *F. H. Busbee,* for the defendant.

MONTGOMERY, J.    This action was brought to recover of
the Western Union Telegraph Company, the defendant, dam-
ages on account of alleged mental anguish suffered by plaintiff
on account of an alleged negligent failure to deliver to him
a telegraphic message.    The telegram was in these words:
"New Bern, N. C., October 3, 1901.    To Bill Meadows,
Pollocksville, N. C.    Will Phillips' wife at point of death.
Will Phillips."    The language of the telegram differs from
that of any in our reported cases, but as a new trial is to be
had for matters hereinafter mentioned, it might not be of any
benefit to discuss now the legal effect of the language of the
dispatch.

In his instructions to the jury, his Honor, among other
things, said "that it was the duty of the telegraph company
to use reasonable diligence in the transmission of all messages
committed to it, and that by the term reasonable or due dili-
gence was not meant the speed of the lightning, except in the
transmission of the message over the wire, on the one hand;
not the proverbial slowness of the messenger boy, on the
other."    There was an exception to the latter part of that
instruction, and the same was assigned by the defendant as
error, and we are of the opinion that the position of the de-
fendant is a correct one.    Whether the defendant had exer-
cised due diligence in the delivery of the message was the
question of fact before the jury.    Telegraphic messages are
usually delivered by boys, called "messenger boys"; and the
plaintiff had testified that "R. R. White's boy worked in the
telegraph office.    He knows me, knew where I lived; could
stand in the office and see my house.    The boy signed the re-
ceipt for the message himself.    After my name was signed,
I said, 'This thing has been delayed, what is the matter?'"
It seems to us that his Honor, in the language used, took as
a criterion of negligent delay the agency employed by the
defendant to deliver its message.    "No Judge, in giving a

charge to the petit jury either in a civil or criminal action shall give an opinion whether a fact is fully or sufficiently proven, such matter being the true office and province of the jury; but he shall state in a plain and correct manner the evidence given in the case, and declare and explain the law thereon." Code, Sec. 413. It is true that his Honor did not, in precise and exact words, tell the jury that in his opinion the fact of a negligent delay had been fully proved, but it seems to us "that his language, when fairly interpreted in connection with so much of the context as is set out in the record, was likely to convey to the jury his opinion of the weight of the evidence." That is the construction of the statute adopted in *State v. Jones,* 67 N. C., 285, and approved in *State v. Laxton,* 78 N. C., 564.

New Trial.

DOUGLAS, J., concurring in result. I concur in the result of the opinion of the Court, because it appears to me, not that harm has been done, but that harm may have been done.

Had I been a juror, the objectionable words would probably have made no such impression on my mind, but that fact alone does not authorize me to say that they could not have such effect upon the minds of other reasonable men, in view of the evident effect that they have had upon the minds of a majority of this Court.

The words themselves do not contain the slightest intimation that any fact in controversy has been proved or disproved. The most that can be said is that they may have been understood by the jury as meaning that the *defendant's* messenger boys were proverbially slow, and that such intimation may have operated to the prejudice of the defendant. If this is so, the defendant should have a new trial. My views as to the absolute right of the citizen to a fair and impartial verdict upon the facts, free from the slightest influence of the

Court, have been too fully and too recently expressed in *State v. Howard,* 129 N. C., 584, 663, to require any further expression in the present case.

CLARK, J., dissenting. The uncontradicted evidence is that the sister of plaintiff being at the point of death in New Bern, her husband, at her request and in consequence of her prior promise to plaintiff in such contingency, on October 3, 1901, at 4:15 p. m., sent a message, which the company's agent wrote for him, to the plaintiff at Pollocksville: "Will Phillips' wife at point of death." The husband prepaid the message, which was written by defendant's agent, who testified that he knew it was an important message. The train passed Pollocksville coming to New Bern at 5:04 p. m. The plaintiff was at work a little more than half a mile from the station in Pollocksville, but in plain view of the office, as was also his house near by, and the message could have been delivered in less than fifteen minutes. The defendant made no effort to deliver the message, but kept it till 6:55 p. m., and then wired back to New Bern for fifty cents more to deliver the message, the residence of plaintiff being just outside of the free-delivery limits. The fifty cents was promptly sent, but the message was not delivered to plaintiff till 8:30 p. m., four hours and fifteen minutes after its receipt by the defendant. The plaintiff contends that it was negligence not to have at once wired back for money to pay for extra service, and that if this had been done, plaintiff could have come to New Bern on 5:04 train, before his sister became unconscious.

The Court, in its charge to the jury, incidentally said: "The company is required to use due diligence in the delivery of a message; by this is not meant the speed of the lightning, except in the transmission of the message over its wires, nor the proverbial slowness of a messenger boy, but it is required to use reasonable diligence, and nothing more." The defend-

ant excepts because of the use of the words "proverbial slowness of a messenger boy." This could not possibly have harmed the defendant, nor have been any expression of opinion whatever upon the controversy in this case. There was no contention by plaintiff that the messenger boy was slow. The jury did not have to consider that matter in any possible view of the case. It was not controverted that defendant received the message at 4:15 p. m., that the only train on which plaintiff could have gone to New Bern passed Pollocksville at 5:04, and that defendant took no steps to deliver the message at that time, and did not telegraph to New Bern for money to send the message out till 6:55. This was the ground relied upon to show defendant's negligence. *Hendricks v. Tel. Co.,* 126 N. C., 304, 78 Am. St. Rep., 658. When at last at 6:55 defendant wired for money to send the message, the damage had been done, the train had passed, and there is no allegation that when the message was finally delivered to the messenger boy, after 8 p. m., that he lingered or delayed. The fault was wholly and entirely with the operator at Pollocksville, and the incidental remark by the Court in regard to the slowness of messenger boys could not possibly be an expression of opinion "upon those facts respecting which the parties take issue or dispute, and upon whose existence depends the liability of the defendant." *State v. Angel,* 29 N. C., 27; *State v. Jones,* 67 N. C., 285; *State v. Debnam,* 98 N. C., 712; *State v. Jacobs,* 106 N. C., 696, and cases there cited.

In *Wharton v. Stilley,* 88 N. C., 18, the Judge laid down some moral observations and the Court said: "We know of no law which prohibits a Judge, in his charge to the jury, from pronouncing a dissertation upon such moral questions as may be suggested by the incidents of the trial, provided it be innocent and work no prejudice to either of the parties"; and in *State v. Gay,* 94 N. C., 814, the Court says: "It can not be error to state a proposition to the jury which is universally admitted."

What can be more undoubtedly admitted from common observation than the "proverbial slowness of a messenger boy," and how could the expression of that truism be harmful to defendant when the conduct of no messenger boy was called in question. From plaintiff's contention, the liability of defendant accrued solely from the neglect of the operator at Pollocksville, long prior to the delivery by him of the message to the messenger boy.

In the trial of Warren Hastings, to a criticism of a rhetorical flourish in his opening speech, Sheridan replied that it was a novelty in legal proceedings "to take a bill of exceptions to a metaphor or enter a special pleading against a trope," but the appellant seems to have repeated that precedent. It is the function of this Court to pass upon alleged errors of law of the trial Judges, but it has not been deemed part of our duties to pass upon matters which should be left to their individual tastes. Some Judges are terse, others are florid, some may refer incidentally to matters of common knowledge, and others restrict themselves to narrower limits, but unless what is said is an expression of opinion "upon the facts in controversy," the appellate Court has not felt that it was called upon to criticise the style or tenor of the charge, as reversible error.