Ruffin, C. J.
 

 The Court is of opinion, that there is no error in the judgment.
 

 On the point respecting the name of the deceased, his Honor was certainly right in saying, that it was the province ofthe jury to determine what the name was. We do not understand what was meant by the request, that the Court would reserve that question. If the prisoner meant to insist that the name of the deceased was not that given to him in the indictment, but another, and wished the aid ofthe Judge in getting the lawful advantage of the defect in the description, the proper method would have been to ask an instruction to the jury, that if they found that the deceased was not named “ Robert B. Roberts,” but something else, they should acquit the prisoner for that variance. But the Court could not assume that the variance in the names existed, so as to reserve or withdraw the whole matter from the jury, according to the motion on behalf of the prisoner.
 

 With the decision of the jury on that question, whether right or wrong, this Court cannot interfere, as has often been declared. But if we could interfere, it is not improper to say, that there does not appear to be any ground for doing so here. The purpose of setting forth the name of the person, who is the subject on which an offence is committed, is to identify the particular fact or transaction, on which the indictment is founded, so that the accused may have the benefit of one acquittal or conviction, if accused a second time. The name is generally required as the best mode of describing the person ; but he may be described otherwise, as by his calling or the like* if he be identified thereby, as the individual, and distinguished from all others ; and if the name be not known, that fact may be stated as an excuse'for omitting it altogether. But here the description of the deceased is by a name, and the objection is, that it is not his true name. Now, there is no
 
 *30
 
 evidence what the true name was, that is to say, in the sense of being the name by baptism ; for it does not appear that this person was ever baptized. He could, therefore, have had a name by reputation only; and it seems that by reputation he was known, as well by the one, as the others of three appellations, namely, “ Robert Barton,” “ Robert B.” and “ Burtand the probability, from the common usage of the country, is, that, in formal and serious transactions, he was more generally called “Robert B.” than otherwise, though on familiar occasions he was oftener by contraction called “ Burt.” The jury might therefore be well warranted in treating these, not as different names, but as different modes of calling the same name. There could be no difficulty imposed on the prisoner in
 
 pleading former
 
 acquittal or conviction; for, by proper averments, that the “Robert B. Roberts,” mentioned in one indictment is one and the same person as the “ Robert Burton Roberts,” or “ Burt Roberts” mentioned in the other, he could readily shew the truth of the case. It must be a sufficient designation of a person, in such a case, to give the name by which he is generally known.
 

 His Honor, undoubtedly, did not transcend his powers and duty, under the act of 1796, in delivering his charge to the jury. The “ facts,” on which the act restrains him from expressing an opinion to the jury, are those, respecting which the parties take issue, or dispute, and on which, as having occurred or not occurred, the imputed liability of the defendant depends. But the act does not prohibit the Judge from drawing attention to things that occur in Court and speaking of them, as having actually occurred there. Thus, the Court could not tell the jury, that it had been sufficiently proved, that the stab was given without any provocation, or that it was after the prisoner had received a blow ; because that was a fact involved in the past transaction, that was then the subject of investigation, and in respect to which the parties
 
 *31
 
 differed, and it was the province of the jury to enquire of the truth. But that the State’s witnesses gave one narrative of that transaction, and the prisoner’s witnesses gave another, and, of course, that “ the witnesses differed in their accounts,” the Judge might not only state to the jury, but it was his duty, by the act of 1796 itself, to state to them: for that act,
 
 “
 
 declares it to be the duty of the Judge to state, in a full and correct manner, the facts given in evidence, and explain the law arising on them.” He was bound, therefore, in summing up the evidence, to draw the attention of the jury to the conflict in the testimony, and explain the importance of it, so as to advise them, what, in law, should be their verdict, according as they should believe that the one or the ether set of witnesses told the truth.
 

 With respect to that part of the exception, which refers to the words of the Judge, that “ the mortal blow
 
 was given"
 
 and that it was given “at or about the commencement of the rencounter,” the argument is, that the Judge assumed those facts to exist. He had a right to assume them as against the prisoner; because they were stated by witnesses brought by him to support his defence» and are to be treated as his own account of the transaction, to this purpose. It is obvious, that the prisoner did not deny the death of the party, nor that he gave the blow which caused it; and that he was insisting by way of defence on an extenuation from the circumstances, under which, as he said, it was given, This pre-supposes that the mortal blow was actually given, and the prisoner’s own witnesses proved the fact; and that amounts to an admission by the prisoner himself, that the blow
 
 was
 
 given by him, and the prisoner cannot complain, that the Judge so treated it. Then with respect to the remark, as to the period at which the blow was given ; his Honor but repeated the substance of what the prisoner’s witnesses themselves had stated, and the prisoner had acquiesced in. Their account was that the stab was
 
 *32
 
 given, as tbe deceased was about giving his first blow, or immediately after having given a slight one, and while attempting to give another, and there was no evidence even of any preceding altercation. It was surely then, given at or about the commencement of the affray ; and, as that appeared upon the prisoner’s own defence, the Court could not err, as against him, in treating as facts, what the prisoner alleged, and his witnesses proved to be the facts.
 

 Judgment of death was therefore properly given, and the Superior Court will further proceed thereon according to law.
 

 Per Curiam, Certificate ordered accordingly.