The defendant was convicted of having in his possession spirituous liquors for the purpose of sale. The evidence showed that on the night of 18 December, 1918, he drove up in an automobile to the house of his brother, Joe Baldwin, near Apex (who was also convicted at the same term of the same offense); at the yard gate he took out of the machine four jugs nearly full of whiskey, one of them being a three-gallon jug. He was arrested by the officers just as he put down inside the yard the last of these jugs. One of the officers went inside the house, leaving the defendant in charge of the *Page 740 
other. The defendant thereupon made his escape. In the back yard of the house seven 5-gallon kegs of corn whiskey were found in the chicken house.
The officers intending to use the defendant's car to transport the liquor to Apex, backed it up to the gate and commenced loading the whiskey on it, when the defendant suddenly made his appearance and took the key out of the car, thus preventing it being used, and again made his escape. When the officers arrived at the house of Joe Baldwin it was lighted up, and when officer Raines went inside he found the wife of Hayes Baldwin playing the piano and a little negro boy ran out of the house. There were in the house also two white people, two men and two women, who refused at first to give their names.
Upon this evidence the jury found the defendant guilty (689) and he appealed.
The exception chiefly relied on, it seems, was that the week before the judge, in sentencing Joe Baldwin (see S. v. Baldwin, post, 693), remarked that in his opinion Joe and Hayes Baldwin were not selling liquor to the people of Apex, but were delivering it to people in Wilson. This was in connection with the fact that the Wilson people found in the house who had been subpoenaed as witnesses had failed to attend.
The trial of the defendant Hayes Baldwin did not take place till the next week, and it does not appear in the record that a single juror on the trial of the present defendant was present when Joe Baldwin was sentenced the previous week. Indeed, Rev. 1959, required that the panel for the first week (when these remarks were made), should be discharged at the end of that week, and there is no probability that any juror who tried this defendant on Thursday of the following week knew of the judge's expression as to the Wilson people on Friday of the week before. Nor could his remarks be considered as an expression of an opinion in the trial of this defendant the following week any more than the verdict of guilty against Joe Baldwin on whom he was passing sentence.
At common law, and in England to this day, the judge is not forbidden to express an opinion upon the facts of any case, but it was deemed that the judge, who is an integral part of the trial, could be of aid to the jury in expressing an opinion upon the reasonable *Page 741 
inferences to be drawn from the evidence, though of course he could not direct a verdict when there was conflicting evidence. The same rule still obtains in all the Federal Courts, and the courts of nearly every State of the Union. It is, therefore, not an inherent right of a defendant that the judge should be restricted from expressing any opinion during a trial. The North Carolina statute being a restriction upon the almost universal rule, cannot be extended beyond its terms, which are as follows: "Rev. 535. No judge, in giving a charge to the petit jury, either in a civil or criminal action, shall give an opinion whether a fact is fully or sufficiently proven, such matter being the true office and province of the jury; but he shall state in a plain and correct manner the evidence given in the case, and declare and explain the law arising therefrom."
This restriction therefore forbids the judge only "in giving a charge to the petit jury," and from "giving an opinion whether a fact is fully or sufficiently proven." Being in derogation of the common law, and of the practice and procedure in the (690) English and Federal Courts, and of the procedure generally elsewhere, we cannot extend it beyond its terms.
In S. v. Jacobs, 106 N.C. 695, where the judge remarked, just before the trial began, that the jailer had informed him that the prisoner "would escape if he had opportunity," this was held not an expression of opinion forbidden by our statute. It was not given "in a charge to the jury," nor was it an expression of "opinion whether a fact was fully or sufficiently proven."
The Court said: "At common law, though the judge, as is still the rule, could not direct a verdict in any criminal case, nor in a civil case, when there was a conflict of evidence, there was no inhibition upon his expressing an opinion upon the facts." It was thought that such expression of opinion, while not governing the jury, would be of assistance to them, coming from an impartial man of much experience in weighing evidence and in drawing conclusions therefrom. Such is still the practice in England and her Colonies, in our Federal Courts, and, indeed, in most of the States of the Union. In North Carolina, in 1796, the following statute was passed, which changed the practice in this respect: "No judge, in giving a charge to the petit jury, either in a civil or criminal action, shall give an opinion whether a fact was fully or sufficiently proven, such matter being the true office and province of the jury." The Court added: "It is difficult to see how the remark of the judge violated any provision of this statute. No juror had been selected, the remark was not in the presence of the jury, nor did it contain any opinion that a fact was fully or sufficiently proven. No facts had been shown in evidence. *Page 742 
Indeed, had the jury been empaneled, the statute prohibited the judge `from expressing an opinion only upon those facts respecting which the parties take issue or dispute, and on which, as having occurred or not occurred, imputed liability of the defendant depends.' Ruffin, C.J., in S. v. Angel,29 N.C. 27. To the same purport, DeBerry v. R. R., 100 N.C. 310; S. v.Jones, 67 N.C. 285; S. v. Robertson, 86 N.C. 628, and S. v. Laxton,78 N.C. 564. In the latter case, in which the prisoner was convicted of rape, Smith, C. J., says: `It is quite obvious from the words of the act that its special object was to prevent the intimation of such opinion in connection with and constituting a part of the instructions by which the jury were to be governed, and when its influence on their minds would be direct and effective.'"
After making the above citations, the Court, in S. v. Jacobs, said further: "Our juries are usually men of intelligence, competent to understand the evidence and draw their own conclusions as to the facts. To construe every remark incidentally made by the judge, in ruling upon debated questions arising on the trial or otherwise, to have such weight upon the mind of the jury as to bias the (691) freedom of their verdict, is as little complimentary to the intelligence and sturdy independence of those who compose our juries as it is to the impartiality of those who are called upon to preside over our Superior and Criminal Courts."
In S. v. Jacobs, supra, the remark was made just before the trial began, but the jury had not been empaneled; the remark was not in a charge to the jury; nor was it an expression of opinion whether "A fact was fully or sufficiently proven," for no facts had been shown in evidence, and hence it was held that it was not a violation of our statute restricting the judge as to such matters. There the men who were subsequently on the jury were doubtless present in the court room at the time when the remark was made. In the present case the remark objected to was made six days previously in passing sentence upon a defendant in another case, and there is no evidence that any one was present who subsequently served on this jury, and the presumption is that there was not, for the previous jury had been discharged by operation of law at the end of the previous week.
In S. v. Angel, 29 N.C. 27, quoted supra, the prisoner was convicted of murder and the remark of the judge excepted to was made in the charge to the jury, Ruffin, C.J., said in that case that the act of the Assembly restraining the judges from expressing to the jury an opinion as to the facts of the case applied "only to those facts respecting which the parties take issue or dispute, and on which, as having occurred or not occurred, the imputed liability of *Page 743 
the defendant depends." This has been cited often since, among other cases, in S. v. Howard, 129 N.C. 661, and in the very recent cases of S. v.Rogers, 168 N.C. 116, and Long v. Byrd, 169 N.C. 659.
Among the cases citing S. v. Jacobs, 110 N.C. 696 (besides those already quoted), are S. v. Crane, 110 N.C. 535, where the Court says: "The jury is an essential part of the judicial system among every English-speaking people, and while not perfect, the experience of the ages and the observation of the present are that it performs fairly well its part. Certainly no better substitute has ever been found. To underrate the intelligence of twelve honest, impartial men, who try the issues of fact submitted to them, is a mistake. When aided by a just and intelligent judge, their verdicts are generally correct. Jurors are not expected to possess legal training. Their province is not to pass on questions of law, but their grasp of the facts is usually just and accurate, and probably no court passes that upon the jury there are not men of equal mental capacity with the judge who presiders, or the counsel who address them. Jurors are not in their nonage, and it is not just to underrate their intelligence. This Court has heretofore said as much in S. v. Jacobs, 106 N.C. 695." This Court, in that case (S. v. Crane,) was remarking upon the exception that though the judge had withdrawn (692) evidence from the jury, it would still be affected by it.
In S. v. Jackson, 112 N.C. 853, where the exception was that during the argument of a motion for continuance of a case in the presence, but prior to the empaneling of a jury, a bystander had remarked in open court that the prisoner's wife had said she would not come to a trial because she would only help get her husband in jail, it was held that it was not ground for exception; that the judge did not grant a continuance therefor, saying: "If such remarks were ground for new trial, all men present who might possibly become jurors would need be sent out of the courthouse on the argument of preliminary motions. Remarks made by the judge on such motions do not come within the prohibition of the statute, S. v. Jacobs,106 N.C. 695, and cases there cited. . . . There is a presumption of law that jurors are men of sufficient intelligence to understand that their verdicts must be based solely upon the evidence adduced on the trial, and the law laid down by the court."
In this present case, the remark of the judge in sentencing another party tried for committing the same offense does not appear to have been heard by any juror who sat in this case, and if it had been, the jury would be presumed conclusively to have tried the case, according to their oaths, upon the evidence submitted to them. *Page 744 
The exception to the refusal of a continuance of the case of Hayes Baldwin because the same judge had tried Joe Baldwin the previous week has no foundation in precedent nor logically for the facts are found by the jury only. 25 Cyc. 582, 583.
The granting or refusal of a continuance like the granting or refusing of a severance, or the separation of witnesses, and like matters, has always been wisely and properly left to the sound discretion of the presiding judge, and not reviewable except in cases of patent abuse, which does not appear here. As was said in S. v. Southerland, at this term: "The judge is not a mere moderator, and it would detract very much from the efficiency and the economy of the administration of justice if he were unnecessarily hampered with arbitrary rules as to matters which have always been committed to his sound discretion."
The defendant also excepts that the court stated as a contention of the State that the jury had a right to consider as a circumstance that when the officers were proceeding to take the whiskey and carry it off the defendant, who had escaped, came back on the scene and locked the car and again escaped. This was stated as a contention, but it would not have been error if the court had told the jury that it was a circumstance which they could consider in connection with the other evidence offered by the State in connection with having the liquor in his possession, whether it was for an unlawful purpose.
There were numerous other exceptions, but after a careful (693) and full consideration of them, we are of opinion they require no discussion.
No error.