IN THE SUPREME COURT OF NORTH CAROLINA

 2022-NCSC-27

 No. 260A20

 Filed 11 March 2022

 STATE OF NORTH CAROLINA

 v.
 MARC PETERSON OLDROYD

 Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

 the Court of Appeals, 271 N.C. App. 544 (2020), reversing a trial court order denying

 defendant’s Motion for Appropriate Relief entered on 9 March 2017 by Judge Michael

 D. Duncan in Superior Court, Yadkin County, and vacating and remanding a

 consolidated judgment entered on 2 June 2014 by Judge William Z. Wood Jr. in

 Superior Court, Yadkin County. Heard in the Supreme Court on 31 August 2021.

 Joshua H. Stein, Attorney General, by Ryan Y. Park, Solicitor General, Sarah
 G. Boyce, Deputy Solicitor General, and Heyward Earnhardt, Solicitor General
 Fellow, for the State-appellant.

 Glenn Gerding, Appellate Defender, by Emily Holmes Davis, Assistant
 Appellate Defender, for defendant-appellee.

 MORGAN, Justice.

¶1 A Yadkin County Grand Jury indicted defendant for first-degree murder,

 attempted robbery with a dangerous weapon, and conspiracy to commit robbery with

 a dangerous weapon on 28 January 2013. Defendant pleaded guilty to the reduced
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

charge of second-degree murder as well as the two robbery charges. Defendant filed

a Motion for Appropriate Relief (MAR) and a Supplemental Motion for Appropriate

Relief (Supplemental MAR), asserting that the indictment which charged him with

the offense of attempted robbery with a dangerous weapon was fatally flawed because

it did not include the name of a victim. Both motions were denied by the trial court.

Defendant sought and obtained appellate review of these denials. He renewed his

position in the Court of Appeals concerning the deficiencies of the charging

instrument. A majority of the lower appellate court agreed with defendant in a

divided decision, holding that the indictment’s description of the victims of

defendant’s attempted robbery as the “employees of the Huddle House located at 1538

NC Highway 67, Jonesville, North Carolina” was insufficient because the indictment

did not comply with the requirement that this Court enunciated in State v. Scott, 237

N.C. 432, 433 (1953) that the name of the person against whom the offense was

directed be stated with exactitude. State v. Oldroyd, 271 N.C. App. 544, 551 (2020).

Because the indictment at issue in the present case satisfies the dual purposes of (1)

informing defendant of the specific crime that he was accused of committing in order

to allow him to prepare a defense, and (2) protecting defendant from being twice put

in jeopardy for the alleged commission of the same offense, we reverse the decision of

the Court of Appeals.
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 I. Factual and Procedural Background

¶2 Defendant, Scott Sica, and Brian Whitaker devised a plan to conduct a 5

 October 1996 robbery of the Huddle House restaurant in Jonesville. The plan called

 for the men to visit a car dealership and to ask to take one of the dealership’s vehicles

 for a test drive. During this test drive, whomever among the three men operated the

 vehicle would switch a fake key for the vehicle’s actual key. After returning to the

 dealership with the vehicle and having the driver to hand over the fake key as if it

 were the vehicle’s real key, defendant and his two counterparts would then return to

 the car dealership after it had closed so that the men could ride away in the vehicle

 that had been used for the supposed test drive. Next in the plan, Sica and Whitaker

 would drive to the Huddle House establishment in the stolen vehicle to commit the

 robbery, while defendant would be positioned nearby in Whitaker’s green Dodge

 pickup truck in order to immediately join Sica and Whitaker after the completion of

 the robbery. The trio would then abandon the vehicle stolen from the car dealership

 and complete their getaway in the green Dodge pickup truck.

¶3 On 1 October 1996, in accordance with the criminal plan, two of the men stole

 a red Dodge pickup truck from a car dealership in West Virginia. Defendant, Sica,

 and Whitaker proceeded to Jonesville on 5 October 1996. Sica and Whitaker went to

 the Huddle House to commit the robbery, while defendant waited in the green Dodge

 pickup truck at a nearby meeting place where Sica and Whitaker would abandon the
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 stolen red Dodge pickup truck and then enter the green Dodge pickup truck to execute

 their escape. Sica and Whitaker arrived at the Huddle House as planned and parked

 behind the business, armed with a 9mm Beretta handgun and a .357 revolver. The

 two men observed an open door at the back of the restaurant, but a group of Huddle

 House employees soon exited the establishment and closed the door behind them.

 Sica got out of the red Dodge pickup truck and approached the rear door of the

 restaurant but discovered that it was locked. Sica then returned to the stolen truck

 to discuss the next steps with Whitaker, when the pair saw Sergeant Greg Martin of

 the Jonesville Police Department drive by the location. Sica and Whitaker decided to

 leave the Huddle House, but Sergeant Martin quickly initiated a traffic stop on the

 stolen red Dodge pickup truck and called for backup officers. Defendant, realizing

 that Sica and Whitaker had not returned to the rendezvous point within the planned

 time period, drove the green Dodge pickup truck toward the main thoroughfare and

 saw that law enforcement had interrupted Sica and Whitaker. Defendant continued

 to drive past the scene before doubling back to return to it.

¶4 Sergeant Martin asked Sica and Whitaker to exit the red Dodge pickup truck;

 the men complied. Sergeant Martin asked Sica and Whitaker for permission to search

 the vehicle; the men consented. Sica and Whitaker stood outside the vehicle while the

 law enforcement officer began to search a bag that contained the masks that the two

 men had planned to use in the robbery of the Huddle House. Sica drew a handgun
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 and shot Sergeant Martin in the head six times, killing the law enforcement officer

 instantly. Sica and Whitaker fled the scene but could not find defendant; as a result,

 the two men detoured to a nearby business where they abandoned the stolen red

 Dodge pickup truck and replaced it by stealing a work van belonging to the business.

 Defendant, upon returning to the scene of the traffic stop, noticed that the red Dodge

 pickup truck in which Sica and Whitaker had been traveling had left and that four

 more law enforcement vehicles had arrived. Defendant overheard a police scanner

 announcement that an officer “was down.” Defendant panicked and fled to his

 cousin’s house in Gastonia, where he reunited with Sica and Whitaker later in the

 day and was informed of the unexpected events that transpired. The three men

 traveled to a Home Depot business in the area to abandon the work van which had

 been taken.

¶5 The State’s investigation of Sergeant Martin’s murder stalled for a number of

 years. Eventually, investigators were able to discover the identities of the three men

 and their possible involvement with the murder as part of a failed robbery attempt.

 Law enforcement officers simultaneously approached defendant, Sica, and Whitaker

 on 2 October 2012. Defendant and Whitaker each provided full confessions to their

 roles in the wrongdoing; Sica denied any involvement.

¶6 After his arrest, defendant was indicted by a Yadkin County Grand Jury on 28

 January 2013 on one count each of first-degree murder, attempted robbery with a
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 dangerous weapon, and conspiracy to commit robbery with a dangerous weapon.

 Defendant’s indictment for attempted robbery with a dangerous weapon alleged that,

 on 5 October 1996, defendant attempted

 to steal, take and carry away another’s personal property,
 United States currency, from the person and presence of
 employees of the Huddle House located at 1538 NC
 Highway 67, Jonesville, North Carolina. The defendant
 committed this act by having in possession and with the
 use and threatened use of a firearm, a 9mm handgun,
 whereby the life of the Huddle House employees was
 threatened and endangered.

 (Emphasis added.) Defendant’s plea hearing took place on 2 June 2014, where

 Detective Ron Perry provided, without objection, the factual basis for defendant’s

 charged offenses. Defendant pleaded guilty to one count each of second-degree

 murder, attempted robbery with a dangerous weapon, and conspiracy to commit

 robbery with a dangerous weapon. The trial court sentenced defendant to 120 to 153

 months in prison.

¶7 On 9 June 2015, defendant filed a pro se motion for appropriate relief (MAR)

 in which he alleged, inter alia, that his indictment for attempted robbery with a

 dangerous weapon was “fatally flawed in that it does not name a victim.” The trial

 court entered an order denying defendant’s MAR on 9 March 2017, concluding as a

 matter of law that “there are no fatal defects in the indictments.” Defendant then

 filed a Supplemental MAR on 16 January 2018, asserting many of the same claims

 for relief that he asserted in his original MAR. The trial court denied defendant’s
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 Supplemental MAR on 16 July 2018, concluding that defendant’s claims were both

 meritless and procedurally barred either by defendant’s failure to raise the issues in

 his original MAR or by the fact that defendant had already raised the issues in his

 initial MAR. Defendant then petitioned the Court of Appeals for a Writ of Certiorari

 which was allowed by the lower appellate court on 28 November 2018 for the limited

 purpose of reviewing the trial court’s conclusion that there were no fatal defects in

 defendant’s indictments. On 19 May 2020, the Court of Appeals issued a divided

 decision which reversed the trial court’s order denying defendant’s MAR, with the

 majority holding that the indictment for robbery with a dangerous weapon “must

 have named a victim to be valid.” Oldroyd, 271 N.C. App. at 552. The State filed a

 notice of appeal to this Court based upon the dissenting opinion filed in the Court of

 Appeals regarding the outcome of this case, with the dissent registering its

 disagreement with the majority’s conclusion that the indictment at issue here was

 fatally defective.

 II. Analysis

¶8 When a criminal defendant challenges the sufficiency of an indictment lodged

 against him, that challenge presents this Court with a question of law which we

 review de novo. State v. White, 372 N.C. 248, 250 (2019). An indictment need not

 conform to any “technical rules of pleading,” State v. Sturdivant, 304 N.C. 293, 311

 (1981), but instead must satisfy both the statutory strictures of N.C.G.S. § 15A-924
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

and the constitutional purposes which indictments are designed to satisfy; namely,

to allow the defendant to identify the event or transaction against which he had been

called to answer so that he may prepare a defense and to protect the defendant

against being twice put in jeopardy for the same crime. State v. Freeman, 314 N.C.

432, 435 (1985). Subsection 15A-924(a)(5) is a codification of the common law rule

that “an indictment must allege all of the essential elements of the offense charged,”

id., and is satisfied if an indictment includes “[a] plain and concise factual statement

in each count which, without allegations of an evidentiary nature, asserts facts

supporting every element of a criminal offense and the defendant’s commission

thereof with sufficient precision clearly to apprise the defendant . . . of the conduct

which is the subject of the accusation.” N.C.G.S. § 15A-924(a)(5) (2021); see also

N.C.G.S. § 15-153 (2021) (“Every criminal proceeding by warrant, indictment,

information, or impeachment is sufficient in form for all intents and purposes if it

express the charge against the defendant in a plain, intelligible, and explicit manner;

and the same shall not be quashed, nor the judgment thereon stayed, by reason of

any informality or refinement, if in the bill or proceeding, sufficient matter appears

to enable the court to proceed to judgment.”). Therefore, aside from the existence of

any additional statutory requirements in specific situations, an indictment is

sufficient if it asserts facts plainly, concisely, and in a non-evidentiary manner which

supports each of the elements of the charged crime with the exactitude necessary to
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 allow the defendant to prepare a defense and to protect the defendant from double

 jeopardy.

¶9 Defendant’s indictment at issue in the case at bar asserted facts supporting

 every element of the criminal offense of attempted robbery with a dangerous weapon

 by providing him with a plain and concise factual statement, without allegations of

 an evidentiary nature, but with the sufficient precision which is statutorily required

 to inform defendant of his alleged conduct which resulted in the accusation of his

 perpetration of the charged offense. A person is guilty of the offense of robbery with

 a dangerous weapon, or an attempt to commit the crime, if he or she (1) “takes or

 attempts to take personal property from another,” (2) while possessing, using, or

 threatening to use a firearm or other dangerous weapon, (3) whereby “the life of a

 person is endangered or threatened.” N.C.G.S. § 14-87(a) (1996); see also State v.

 Murrell, 370 N.C. 187, 194 (2017). The indictment in the instant case alleged (1) that

 defendant did “attempt to steal, take and carry away another’s personal property,

 United States currency, from the person and presence of employees of the Huddle

 House located at 1538 NC Highway 67, Jonesville, North Carolina,” (2) that

 defendant did so “by having in possession and with the use and threatened use of a

 firearm, a 9mm handgun,” and that, as a result, (3) “the life of the Huddle House

 employees was threatened and endangered.” A comparison of the essential elements

 of the crime of robbery with a dangerous weapon as set forth in N.C.G.S. § 14-87(a)
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 with the fulsome content of the indictment at issue indicates that the State

 sufficiently satisfied all of the requirements of N.C.G.S. § 15A-924(a)(5) regarding the

 properness of the indictment as a criminal pleading. See State v. Rambert, 341 N.C.

 173, 176 (1995) (holding that the relaxation of strict common law pleading

 requirements codified in N.C.G.S. § 15A-924 does not require that an indictment

 “describe in detail the specific events or evidence that would be used to prove each

 count,” so long as the indictment “allege[s] the ultimate facts constituting each

 element of the criminal offense”). However, while compliance with N.C.G.S. § 15A-

 924 will generally satisfy the constitutional protections which are guaranteed to

 criminal defendants by the Double Jeopardy Clause, Freeman, 314 N.C. at 435,

 defendant argues that the indictment here violated his constitutional right to be

 protected from double jeopardy because the indictment failed to provide the legal

 name of a person against whom his alleged offense was directed.

¶ 10 Defendant asserts that “an indictment for a crime against the person must

 state with exactitude the name of a person against whom the offense was committed,

 so the indictment protects defendant from double jeopardy[,] . . . gives defendant

 sufficient notice to prepare a defense[,] and allows the trial court to enter the right

 judgment if defendant is convicted.” Defendant deduces this standard on the basis of

 several opinions of this Court which he cites and which predate the passage of the

 Criminal Procedure Act of 1975. In doing so, defendant relies on the application of
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 strict and outdated common law pleading requirements as recounted in State v.

 Angel, 29 N.C. (7 Ired.) 27 (1846). Similarly, defendant construes State v. Scott, 237

 N.C. 432 (1953), and State v. Stokes, 274 N.C. 409 (1968), to support his contention

 that, notwithstanding the disputed indictment’s compliance with the statutory “plain

 and concise factual statement” standard of N.C.G.S. § 15A-924(a)(5), the indictment

 here must specifically name each of the alleged targets of his attempted robbery.

 Defendant’s stance, however, does not take into account the relaxation of the

 erstwhile common law criminal pleadings and the codification of amendments to

 N.C.G.S. § 15A-924 by the pertinent portion of the Criminal Procedure Act of 1975

 which statutorily modernizes the requirements of a valid indictment. See State v.

 Williams, 368 N.C. 620, 623 (2016) (“[W]e are no longer bound by the ‘ancient strict

 pleading requirements of the common law[.]’ ” (quoting Freeman, 314 N.C. at 436)).

 After all, passage of the Criminal Procedure Act of 1975 signaled a shift “away from

 the technical rules of pleading” which defendant now asks us to resurrect. State v.

 Mostafavi, 370 N.C. 681, 685 (2018) (extraneity omitted).

¶ 11 Defendant’s reliance on this Court’s decisions in Scott and in Stokes is

 misplaced. In Scott, we held that an indictment which alleged that the defendant

 feloniously assaulted “George Rogers” with the intent to kill “George Sanders” was

 insufficient because “[a]t common law it is of vital importance that the name of the

 person against whom the offense was directed be stated with exactitude.” Scott, 237
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 N.C. at 433 (emphasis added). In Stokes, the indictment returned against the

 defendant failed to allege the identity of the person with whom the defendant

 allegedly committed a crime against nature. Stokes, 274 N.C. at 414. As a result,

 Stokes involved the failure of the indictment to name any victim at all, while Scott

 involved an indictment that gave two different names for the alleged victim. Neither

 of these types of situations exist in this case. In addition, both of these cases were

 expressly decided on the basis of the common law rather than the Criminal Procedure

 Act of 1975 and the codification of much of the Act in N.C.G.S. § 15A-924(a)(5) which

 had the effect of relaxing the strict common law pleading rules upon which Scott and

 Stokes relied.

¶ 12 While defendant argues that his right to be protected from double jeopardy was

 imperiled by the lack of greater specificity in the description of the alleged victims of

 his alleged criminal offense, it is worthy of ironic note that it would appear that his

 protection from being twice put in jeopardy for the commission of the alleged crime is

 actually reinforced by the identification of a group of persons as the alleged victims

 here. Such a description of the allegedly wronged individuals would seem to serve to

 prevent the State from proceeding against defendant in a second prosecution by

 naming any individual within the “employees of the Huddle House” group as a

 separate alleged victim, while simultaneously affording defendant additional

 fortification against further prosecution in the event that any person employed by the
 STATE V. OLDROYD

 2022-NCSC-27

 Opinion of the Court

 establishment on 5 October 1996—whether on duty at the fateful time of day or not—

 comes forward as an alleged victim.

 III. Conclusion

¶ 13 The indictment in the present case, as previously discussed, comports with the

 requirements of N.C.G.S. § 15A-924(a)(5) and the current status of the law related to

 the sufficiency of the details which were required to be contained in the indictment

 in order to provide defendant with a plain and concise factual statement which

 conveyed the exactitude necessary to place him on notice of the event or transaction

 against which he was expected to defend, to protect defendant from being placed in

 jeopardy twice for the same crime, and to guide the trial court in entering the correct

 judgment. Therefore, the trial court had the necessary jurisdiction to enter judgment

 against defendant pursuant to his plea of guilty to the charge of attempted robbery

 with a dangerous weapon. As a result, the Court of Appeals decision is reversed, and

 the judgment of the trial court is reinstated.

 REVERSED.