IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-27

No. 260A20

Filed 11 March 2022

STATE OF NORTH CAROLINA

v.

MARC PETERSON OLDROYD

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 271 N.C. App. 544 (2020), reversing a trial court order denying defendant's Motion for Appropriate Relief entered on 9 March 2017 by Judge Michael D. Duncan in Superior Court, Yadkin County, and vacating and remanding a consolidated judgment entered on 2 June 2014 by Judge William Z. Wood Jr. in Superior Court, Yadkin County. Heard in the Supreme Court on 31 August 2021.

*Joshua H. Stein, Attorney General, by Ryan Y. Park, Solicitor General, Sarah G. Boyce, Deputy Solicitor General, and Heyward Earnhardt, Solicitor General Fellow, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Emily Holmes Davis, Assistant Appellate Defender, for defendant-appellee.*

MORGAN, Justice.

¶ 1    A Yadkin County Grand Jury indicted defendant for first-degree murder, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon on 28 January 2013. Defendant pleaded guilty to the reduced

charge of second-degree murder as well as the two robbery charges. Defendant filed a Motion for Appropriate Relief (MAR) and a Supplemental Motion for Appropriate Relief (Supplemental MAR), asserting that the indictment which charged him with the offense of attempted robbery with a dangerous weapon was fatally flawed because it did not include the name of a victim. Both motions were denied by the trial court. Defendant sought and obtained appellate review of these denials. He renewed his position in the Court of Appeals concerning the deficiencies of the charging instrument. A majority of the lower appellate court agreed with defendant in a divided decision, holding that the indictment's description of the victims of defendant's attempted robbery as the "employees of the Huddle House located at 1538 NC Highway 67, Jonesville, North Carolina" was insufficient because the indictment did not comply with the requirement that this Court enunciated in *State v. Scott*, 237 N.C. 432, 433 (1953) that the name of the person against whom the offense was directed be stated with exactitude. *State v. Oldroyd*, 271 N.C. App. 544, 551 (2020). Because the indictment at issue in the present case satisfies the dual purposes of (1) informing defendant of the specific crime that he was accused of committing in order to allow him to prepare a defense, and (2) protecting defendant from being twice put in jeopardy for the alleged commission of the same offense, we reverse the decision of the Court of Appeals.

## I.    Factual and Procedural Background

Defendant, Scott Sica, and Brian Whitaker devised a plan to conduct a 5 October 1996 robbery of the Huddle House restaurant in Jonesville. The plan called for the men to visit a car dealership and to ask to take one of the dealership's vehicles for a test drive. During this test drive, whomever among the three men operated the vehicle would switch a fake key for the vehicle's actual key. After returning to the dealership with the vehicle and having the driver to hand over the fake key as if it were the vehicle's real key, defendant and his two counterparts would then return to the car dealership after it had closed so that the men could ride away in the vehicle that had been used for the supposed test drive. Next in the plan, Sica and Whitaker would drive to the Huddle House establishment in the stolen vehicle to commit the robbery, while defendant would be positioned nearby in Whitaker's green Dodge pickup truck in order to immediately join Sica and Whitaker after the completion of the robbery. The trio would then abandon the vehicle stolen from the car dealership and complete their getaway in the green Dodge pickup truck.

On 1 October 1996, in accordance with the criminal plan, two of the men stole a red Dodge pickup truck from a car dealership in West Virginia. Defendant, Sica, and Whitaker proceeded to Jonesville on 5 October 1996. Sica and Whitaker went to the Huddle House to commit the robbery, while defendant waited in the green Dodge pickup truck at a nearby meeting place where Sica and Whitaker would abandon the

stolen red Dodge pickup truck and then enter the green Dodge pickup truck to execute their escape. Sica and Whitaker arrived at the Huddle House as planned and parked behind the business, armed with a 9mm Beretta handgun and a .357 revolver. The two men observed an open door at the back of the restaurant, but a group of Huddle House employees soon exited the establishment and closed the door behind them. Sica got out of the red Dodge pickup truck and approached the rear door of the restaurant but discovered that it was locked. Sica then returned to the stolen truck to discuss the next steps with Whitaker, when the pair saw Sergeant Greg Martin of the Jonesville Police Department drive by the location. Sica and Whitaker decided to leave the Huddle House, but Sergeant Martin quickly initiated a traffic stop on the stolen red Dodge pickup truck and called for backup officers. Defendant, realizing that Sica and Whitaker had not returned to the rendezvous point within the planned time period, drove the green Dodge pickup truck toward the main thoroughfare and saw that law enforcement had interrupted Sica and Whitaker. Defendant continued to drive past the scene before doubling back to return to it.

¶ 4 Sergeant Martin asked Sica and Whitaker to exit the red Dodge pickup truck; the men complied. Sergeant Martin asked Sica and Whitaker for permission to search the vehicle; the men consented. Sica and Whitaker stood outside the vehicle while the law enforcement officer began to search a bag that contained the masks that the two men had planned to use in the robbery of the Huddle House. Sica drew a handgun

and shot Sergeant Martin in the head six times, killing the law enforcement officer instantly. Sica and Whitaker fled the scene but could not find defendant; as a result, the two men detoured to a nearby business where they abandoned the stolen red Dodge pickup truck and replaced it by stealing a work van belonging to the business. Defendant, upon returning to the scene of the traffic stop, noticed that the red Dodge pickup truck in which Sica and Whitaker had been traveling had left and that four more law enforcement vehicles had arrived. Defendant overheard a police scanner announcement that an officer "was down." Defendant panicked and fled to his cousin's house in Gastonia, where he reunited with Sica and Whitaker later in the day and was informed of the unexpected events that transpired. The three men traveled to a Home Depot business in the area to abandon the work van which had been taken.

The State's investigation of Sergeant Martin's murder stalled for a number of years. Eventually, investigators were able to discover the identities of the three men and their possible involvement with the murder as part of a failed robbery attempt. Law enforcement officers simultaneously approached defendant, Sica, and Whitaker on 2 October 2012. Defendant and Whitaker each provided full confessions to their roles in the wrongdoing; Sica denied any involvement.

After his arrest, defendant was indicted by a Yadkin County Grand Jury on 28 January 2013 on one count each of first-degree murder, attempted robbery with a

dangerous weapon, and conspiracy to commit robbery with a dangerous weapon.

Defendant's indictment for attempted robbery with a dangerous weapon alleged that,

on 5 October 1996, defendant attempted

> to steal, take and carry away another's personal property,
> United States currency, from the person and presence of
> *employees of the Huddle House located at 1538 NC
> Highway 67, Jonesville, North Carolina.* The defendant
> committed this act by having in possession and with the
> use and threatened use of a firearm, a 9mm handgun,
> whereby the life of the Huddle House employees was
> threatened and endangered.

(Emphasis added.) Defendant's plea hearing took place on 2 June 2014, where

Detective Ron Perry provided, without objection, the factual basis for defendant's

charged offenses. Defendant pleaded guilty to one count each of second-degree

murder, attempted robbery with a dangerous weapon, and conspiracy to commit

robbery with a dangerous weapon. The trial court sentenced defendant to 120 to 153

months in prison.

¶ 7      On 9 June 2015, defendant filed a pro se motion for appropriate relief (MAR)

in which he alleged, *inter alia*, that his indictment for attempted robbery with a

dangerous weapon was "fatally flawed in that it does not name a victim." The trial

court entered an order denying defendant's MAR on 9 March 2017, concluding as a

matter of law that "there are no fatal defects in the indictments." Defendant then

filed a Supplemental MAR on 16 January 2018, asserting many of the same claims

for relief that he asserted in his original MAR. The trial court denied defendant's

Supplemental MAR on 16 July 2018, concluding that defendant's claims were both meritless and procedurally barred either by defendant's failure to raise the issues in his original MAR or by the fact that defendant had already raised the issues in his initial MAR. Defendant then petitioned the Court of Appeals for a Writ of Certiorari which was allowed by the lower appellate court on 28 November 2018 for the limited purpose of reviewing the trial court's conclusion that there were no fatal defects in defendant's indictments. On 19 May 2020, the Court of Appeals issued a divided decision which reversed the trial court's order denying defendant's MAR, with the majority holding that the indictment for robbery with a dangerous weapon "must have named a victim to be valid." *Oldroyd*, 271 N.C. App. at 552. The State filed a notice of appeal to this Court based upon the dissenting opinion filed in the Court of Appeals regarding the outcome of this case, with the dissent registering its disagreement with the majority's conclusion that the indictment at issue here was fatally defective.

## II.   Analysis

When a criminal defendant challenges the sufficiency of an indictment lodged against him, that challenge presents this Court with a question of law which we review de novo. *State v. White*, 372 N.C. 248, 250 (2019). An indictment need not conform to any "technical rules of pleading," *State v. Sturdivant*, 304 N.C. 293, 311 (1981), but instead must satisfy both the statutory strictures of N.C.G.S. § 15A-924

and the constitutional purposes which indictments are designed to satisfy; namely, to allow the defendant to identify the event or transaction against which he had been called to answer so that he may prepare a defense and to protect the defendant against being twice put in jeopardy for the same crime. *State v. Freeman*, 314 N.C. 432, 435 (1985). Subsection 15A-924(a)(5) is a codification of the common law rule that "an indictment must allege all of the essential elements of the offense charged," *id.*, and is satisfied if an indictment includes "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation." N.C.G.S. § 15A-924(a)(5) (2021); *see also* N.C.G.S. § 15-153 (2021) ("Every criminal proceeding by warrant, indictment, information, or impeachment is sufficient in form for all intents and purposes if it express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment."). Therefore, aside from the existence of any additional statutory requirements in specific situations, an indictment is sufficient if it asserts facts plainly, concisely, and in a non-evidentiary manner which supports each of the elements of the charged crime with the exactitude necessary to

allow the defendant to prepare a defense and to protect the defendant from double jeopardy.

¶ 9 Defendant's indictment at issue in the case at bar asserted facts supporting every element of the criminal offense of attempted robbery with a dangerous weapon by providing him with a plain and concise factual statement, without allegations of an evidentiary nature, but with the sufficient precision which is statutorily required to inform defendant of his alleged conduct which resulted in the accusation of his perpetration of the charged offense. A person is guilty of the offense of robbery with a dangerous weapon, or an attempt to commit the crime, if he or she (1) "takes or attempts to take personal property from another," (2) while possessing, using, or threatening to use a firearm or other dangerous weapon, (3) whereby "the life of a person is endangered or threatened." N.C.G.S. § 14-87(a) (1996); *see also State v. Murrell*, 370 N.C. 187, 194 (2017). The indictment in the instant case alleged (1) that defendant did "attempt to steal, take and carry away another's personal property, United States currency, from the person and presence of employees of the Huddle House located at 1538 NC Highway 67, Jonesville, North Carolina," (2) that defendant did so "by having in possession and with the use and threatened use of a firearm, a 9mm handgun," and that, as a result, (3) "the life of the Huddle House employees was threatened and endangered." A comparison of the essential elements of the crime of robbery with a dangerous weapon as set forth in N.C.G.S. § 14-87(a)

with the fulsome content of the indictment at issue indicates that the State sufficiently satisfied all of the requirements of N.C.G.S. § 15A-924(a)(5) regarding the properness of the indictment as a criminal pleading. *See State v. Rambert*, 341 N.C. 173, 176 (1995) (holding that the relaxation of strict common law pleading requirements codified in N.C.G.S. § 15A-924 does not require that an indictment "describe in detail the specific events or evidence that would be used to prove each count," so long as the indictment "allege[s] the ultimate facts constituting each element of the criminal offense"). However, while compliance with N.C.G.S. § 15A-924 will generally satisfy the constitutional protections which are guaranteed to criminal defendants by the Double Jeopardy Clause, *Freeman*, 314 N.C. at 435, defendant argues that the indictment here violated his constitutional right to be protected from double jeopardy because the indictment failed to provide the legal name of a person against whom his alleged offense was directed.

¶ 10     Defendant asserts that "an indictment for a crime against the person must state with exactitude the name of a person against whom the offense was committed, so the indictment protects defendant from double jeopardy[,] . . . gives defendant sufficient notice to prepare a defense[,] and allows the trial court to enter the right judgment if defendant is convicted." Defendant deduces this standard on the basis of several opinions of this Court which he cites and which predate the passage of the Criminal Procedure Act of 1975. In doing so, defendant relies on the application of

strict and outdated common law pleading requirements as recounted in *State v. Angel*, 29 N.C. (7 Ired.) 27 (1846). Similarly, defendant construes *State v. Scott*, 237 N.C. 432 (1953), and *State v. Stokes*, 274 N.C. 409 (1968), to support his contention that, notwithstanding the disputed indictment's compliance with the statutory "plain and concise factual statement" standard of N.C.G.S. § 15A-924(a)(5), the indictment here must specifically name each of the alleged targets of his attempted robbery. Defendant's stance, however, does not take into account the relaxation of the erstwhile common law criminal pleadings and the codification of amendments to N.C.G.S. § 15A-924 by the pertinent portion of the Criminal Procedure Act of 1975 which statutorily modernizes the requirements of a valid indictment. *See State v. Williams*, 368 N.C. 620, 623 (2016) ("[W]e are no longer bound by the 'ancient strict pleading requirements of the common law[.]' " (quoting *Freeman*, 314 N.C. at 436)). After all, passage of the Criminal Procedure Act of 1975 signaled a shift "away from the technical rules of pleading" which defendant now asks us to resurrect. *State v. Mostafavi*, 370 N.C. 681, 685 (2018) (extraneity omitted).

¶ 11 Defendant's reliance on this Court's decisions in *Scott* and in *Stokes* is misplaced. In *Scott*, we held that an indictment which alleged that the defendant feloniously assaulted "George Rogers" with the intent to kill "George Sanders" was insufficient because "[a]t *common law* it is of vital importance that the name of the person against whom the offense was directed be stated with exactitude." *Scott*, 237

N.C. at 433 (emphasis added). In *Stokes*, the indictment returned against the defendant failed to allege the identity of the person with whom the defendant allegedly committed a crime against nature. *Stokes*, 274 N.C. at 414. As a result, *Stokes* involved the failure of the indictment to name any victim at all, while *Scott* involved an indictment that gave two different names for the alleged victim. Neither of these types of situations exist in this case. In addition, both of these cases were expressly decided on the basis of the common law rather than the Criminal Procedure Act of 1975 and the codification of much of the Act in N.C.G.S. § 15A-924(a)(5) which had the effect of relaxing the strict common law pleading rules upon which *Scott* and *Stokes* relied.

While defendant argues that his right to be protected from double jeopardy was imperiled by the lack of greater specificity in the description of the alleged victims of his alleged criminal offense, it is worthy of ironic note that it would appear that his protection from being twice put in jeopardy for the commission of the alleged crime is actually reinforced by the identification of a group of persons as the alleged victims here. Such a description of the allegedly wronged individuals would seem to serve to prevent the State from proceeding against defendant in a second prosecution by naming any individual within the "employees of the Huddle House" group as a separate alleged victim, while simultaneously affording defendant additional fortification against further prosecution in the event that any person employed by the

establishment on 5 October 1996—whether on duty at the fateful time of day or not—comes forward as an alleged victim.

### III. Conclusion

The indictment in the present case, as previously discussed, comports with the requirements of N.C.G.S. § 15A-924(a)(5) and the current status of the law related to the sufficiency of the details which were required to be contained in the indictment in order to provide defendant with a plain and concise factual statement which conveyed the exactitude necessary to place him on notice of the event or transaction against which he was expected to defend, to protect defendant from being placed in jeopardy twice for the same crime, and to guide the trial court in entering the correct judgment. Therefore, the trial court had the necessary jurisdiction to enter judgment against defendant pursuant to his plea of guilty to the charge of attempted robbery with a dangerous weapon. As a result, the Court of Appeals decision is reversed, and the judgment of the trial court is reinstated.

REVERSED.